*509 Chief Justice Roberts
delivered the opinion of the Court.
People make mistakes. Even administrators of ERISA plans. That should come as no surprise, given that the Employee Retirement Income Security Act of 1974 is “an enormously complex and detailed statute,” Mertens v. Hewitt Associates, 508 U. S. 248, 262 (1998), and the plans that administrators must construe can be lengthy and complicated. (The one at issue here runs to 81 pages, with 139 sections.) We held in Firestone Tire & Rubber Co. v. Bruch, 489 U. S. 101 (1989), that an ERISA plan administrator with discretionary authority to interpret a plan is entitled to deference in exercising that discretion. The question here is whether a single honest mistake in plan interpretation justifies stripping the administrator of that deference for subsequent related interpretations of the plan. We hold that it does not.
I
As in many ERISA matters, the facts of this case are exceedingly complicated. Fortunately, most of the factual details are unnecessary to the legal issues before us, so we cover them only in broad strokes. This case concerns Xerox Corporation’s pension plan, which is covered by ERISA, 88 Stat. 829, as amended, 29 U. S. C. § 1001 et seq. Petitioners are the plan itself (hereinafter Plan), and the Plan’s current *510 and former administrators (hereinafter Plan Administrator). See § 1002(16)(A)(i); App. 32a. Respondents are Xerox employees who left the company in the 1980’s, received lump-sum distributions of retirement benefits they had earned up to that point, and were later rehired. See 328 F. Supp. 2d 420, 424 (WDNY 2004); Brief for Respondents 9-10. The dispute giving rise to this case concerns how to account for respondents’ past distributions when calculating their current benefits — that is, how to avoid paying respondents the same benefits twice.
The Plan Administrator initially interpreted the Plan to call for an approach that has come to be known as the “phantom account” method. 328 F. Supp. 2d, at 424. Essentially, that method calculated the hypothetical growth that respondents’ past distributions would have experienced if the money had remained in Xerox’s investment funds, and reduced respondents’ present benefits accordingly. See id., at 426-428; App. to Pet. for Cert. 146a. After the Plan Administrator denied respondents’ administrative challenges to that method, respondents filed suit in federal court under ERISA, 29 U. S. C. § 1132(a)(1)(B). See 328 F. Supp. 2d, at 428-429. The District Court granted summary judgment for the Plan, applying a deferential standard of review to the Plan Administrator’s interpretation. See id., at 430-431, 439. The Second Circuit vacated and remanded, holding that the Plan Administrator’s interpretation was unreasonable and that respondents had not been adequately notified that the phantom account method would be used to calculate their benefits. See 433 F. 3d 254, 257, 265-269 (2006).
The phantom account method having been exorcised from the Plan, the District Court on remand considered other approaches for adjusting respondents’ present benefits in light of their past distributions. See 472 F. Supp. 2d 452,456-458 (WDNY 2007). The Plan Administrator submitted an affidavit proposing an approach that, like the phantom account method, accounted for the time value of the money that re *511 spondents had previously received. But unlike the phantom account method, the Plan Administrator’s new approach did not calculate the present value of a past distribution based on events that occurred after the distribution was made. Instead, the new approach used an interest rate that was fixed at the time of the distribution, thereby calculating the current value of the distribution based on information that was known at the time of the distribution. See App. to Pet. for Cert. 147a-153a. Petitioners argued that the District Court should apply a deferential standard of review to this approach, and accept it as a reasonable interpretation of the Plan. See Defendants’ Pre-Hearing Brief Addressed to Remedies in No. OO-CV-6311 (WDNY), pp. 7-8; Defendants’ Pre-Hearing Reply Brief Addressing Remedies in No. OO-CV-6311 (WDNY), p. 2.
The District Court did not apply a deferential standard of review. Nor did it accept the Plan Administrator’s interpretation. Instead, after finding the Plan to be ambiguous, the District Court adopted an approach proposed by respondents that did not account for the time value of money. Under that approach, respondents’ present benefits were reduced only by the nominal amount of their past distributions— thereby treating a dollar distributed to respondents in the 1980’s as equal in value to a dollar distributed today. See 472 P. Supp. 2d, at 457-458. The Second Circuit affirmed in relevant part, holding that the District Court was correct not to apply a deferential standard on remand, and that the District Court’s decision on the merits was not an abuse of discretion. See 535 F. 3d 111, 119 (2008).
Petitioners asked us to grant certiorari on two questions: (1) whether the District Court owed deference to the Plan Administrator’s interpretation of the Plan on remand, and (2) whether the Court of Appeals properly granted deference to the District Court on the merits. Pet. for Cert. i. We granted .certiorari on both, 557 U. S. 933 (2009), but find it necessary to decide only the first.
*512 II
A
This Court addressed the standard for reviewing the decisions of ERISA plan administrators in Firestone, 489 U. S. 101. Because ERISA’s text does not directly resolve the matter, we looked to “principles of trust law” for guidance. Id., at 109, 111. We recognized that, under trust law, the proper standard of review of a trustee's decision depends on the language of the instrument creating the trust. See id., at 111-112. If the trust documents give the trustee “power to construe disputed or doubtful terms,... the trustee’s interpretation will not be disturbed if reasonable.” Id., at 111. Based on these considerations, we held that “a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.” Id., at 115.
We expanded Firestone’s approach in Metropolitan Life Ins. Co. v. Glenn, 554 U. S. 105 (2008). In determining the proper standard of review when a plan administrator operates under a conflict of interest, we again looked to trust law, the terms of the plan at issue, and the principles of ERISA— plus, of course, our precedent in Firestone. See 554 U. S., at 110-116. We held that, when the terms of a plan grant discretionary authority to the plan administrator, a deferential standard of review remains appropriate even in the face of a conflict. See id., at 115-116.
It is undisputed that, under Firestone and the terms of the Plan, the Plan Administrator here would normally be entitled to deference when interpreting the Plan. See 328 F. Supp. 2d, at 430-431 (observing that the Plan grants the Plan Administrator “broad discretion in making decisions relative to the Plan”). The Court of Appeals, however, crafted an exception to Firestone deference. Specifically, *513 the Second Circuit held that a court need not apply a deferential standard “where the administrator ha[s] previously construed the same [plan] terms and we found such a construction to have violated ERISA.” 535 F. 3d, at 119. Under that view, the District Court here was entitled to reject a reasonable interpretation of the Plan offered by the Plan Administrator, solely because the Court of Appeals had overturned a previous interpretation by the Administrator. Cf. ibid, (accepting the District Court’s chosen method as one of “several reasonable alternatives”).
B
We reject this “one-strike-and-you’re-out” approach. Brief for Petitioners 51. As an initial matter, it has no basis in the Court’s holding in Firestone, which set out a broad standard of deference without any suggestion that the standard was susceptible to ad hoc exceptions like the one adopted by the Court of Appeals. See 489 U. S., at 111, 115. Indeed, we refused to create such an exception to Firestone deference in Glenn, recognizing that ERISA law was already complicated enough without adding “special procedural or evidentiary rules” to the mix. 554 U. S., at 116. If, as we held in Glenn, a systemic conflict of interest does not strip a plan administrator of deference, see id., at 115, it is difficult to see why a single honest mistake would require a different result.
Nor is the Court of Appeals’ decision supported by the considerations on which our holdings in Firestone and Glenn were based — namely, the terms of the plan, principles of trust law, and the purposes of ERISA. See supra, at 512. First, the Plan here grants the Plan Administrator general authority to “[c]onstrue the Plan.” App. to Pet. for Cert. 141a-142a. Nothing in that provision suggests that the grant of authority is limited to first efforts to construe the Plan.
*514 Second, the Court of Appeals’ exception to Firestone deference is not required by principles of trust law. Trust law is unclear on the narrow question before us. A leading treatise states that a court will strip a trustee of his discretion when there is reason to believe that he will not exercise that discretion fairly — for example, upon a showing that the trustee has already acted in bad faith:
“If the trustee’s failure to pay a reasonable amount [to the beneficiary of the trust] is due to a failure to exercise [the trustee’s] discretion honestly and fairly, the court may well fix the amount [to be paid] itself. On the other hand, if the trustee’s failure to provide reasonably for the beneficiary is due to a mistake as to the trustee’s duties or powers, and there is no reason to believe the trustee will not fairly exercise the discretion once the court has determined the extent of the trustee’s duties and powers, the court ordinarily will not fix the amount but will instead direct the trustee to make reasonable provision for the beneficiary’s support.” 3 A. Scott, W. Fratcher, & M. Ascher, Scott and Ascher on Trusts § 18.2.1, pp. 1348-1349 (5th ed. 2007) (hereinafter Scott and Ascher) (citing cases; footnote omitted).
This is not surprising — if the settlor who creates a trust grants discretion to the trustee, it seems doubtful that the settlor would want the trustee divested entirely of that discretion simply because of one good-faith mistake.[1]
*515 Here the lower courts made no finding that the Plan Administrator had acted in bad faith or would not fairly exercise his discretion to interpret the terms of the Plan. Thus, if the District Court had followed the trust law principles set out in Scott and Ascher, it should not have “act[ed] as a substitute trustee,” Eaton v. Eaton, 82 N. H. 216, 218, 132 A. 10, 11 (1926), and stripped the Plan Administrator of the deference he would otherwise enjoy under Firestone and the terms of the Plan.
Other trust law sources, however, point the other way. For example, the Restatement (Second) of Trusts states that “the court will control the trustee in the exercise of a power where he acts beyond the bounds of a reasonable judgment.” 1 Restatement (Second) of Trusts § 187, Comment i, p. 406 (1957). Another treatise states that, after a trustee has abused his discretion, “[s]ometimes the court decides for the trustee how he should act, either by stating the exact result it desires to achieve, or by fixing some limits on the trustee’s *516 action and giving him leeway within those limits.” G. Bogert & G. Bogert, Law of Trusts and Trustees §560, p. 223 (2d rev. ed. 1980).
The unclear state of trust law on the question was perhaps best captured by the Texas Supreme Court:
“There is authority for ordering a dismissal of the case to afford the trustee an opportunity to exercise a reasonable discretion in arriving at the amount of payments to be made in the light of our discussion of the problem and after a proper consideration of the many factors involved. On the other hand, there is authority for remanding the case to the trial court to hear evidence and in the exercise of its supervisory jurisdiction to fix the amount of such payments. There is still other authority for remanding the case to the trial court to hear evidence and fix the boundaries of a reasonable discretion to be exercised by the trustee within maximum and minimum limits.” State v. Rubion, 158 Tex. 43, 54-55, 308 S. W. 2d 4, 11 (1957) (citations omitted).
While we are “guided by principles of trust law” in ERISA cases, Firestone, 489 U. S., at 111, we have recognized before that “trust law does not tell the entire story,” Varity Corp. v. Howe, 516 U. S. 489, 497 (1996); see ibid. (“In some instances, trust law will offer only a starting point, after which courts must go on to ask whether, or to what extent, the language of the statute, its structure, or its purposes require departing from common-law trust requirements”); Brief for Respondents 50 (pressing same view as the dissent but concluding that the dispute over trust law “need not be resolved”). Here trust law does not resolve the specific issue before us, but the guiding principles we have identified underlying ERISA do.
Congress enacted ERISA to ensure that employees would receive the benefits they had earned, but Congress did not require employers to establish benefit plans in the first place. *517 Lockheed Corp. v. Spink, 517 U. S. 882, 887 (1996). We have therefore recognized that ERISA represents a “ ‘careful balancing’ between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans.” Aetna Health Inc. v. Davila, 542 U. S. 200, 215 (2004) (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U. S. 41, 54 (1987)). Congress sought “to create a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place.” Varity Corp., supra, at 497. ERISA “induc[es] employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred.” Rush Prudential HMO, Inc. v. Moran, 536 U. S. 355, 379 (2002).
Firestone deference protects these interests and, by permitting an employer to grant primary interpretive authority over an ERISA plan to the plan administrator, preserves the “careful balancing” on which ERISA is based. Deference promotes efficiency by encouraging resolution of benefits disputes through internal administrative proceedings rather than costly litigation. It also promotes predictability, as an employer can rely on the expertise of the plan administrator rather than worry about unexpected and inaccurate plan interpretations that might result from de novo judicial review. Moreover, Firestone deference serves the interest of uniformity, helping to avoid a patchwork of different interpretations of a plan, like the one here, that covers employees in different jurisdictions — a result that “would introduce considerable inefficiencies in benefit program operation, which might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them.” Fort Halifax Packing Co. v. Coyne, 482 U. S. 1, 11 (1987). Indeed, a group of prominent actuaries tells us that it is impossible even to determine whether an ERISA plan is solvent (a duty imposed on actuaries by federal law, *518 see 29 U. S. C. §§ 1023(a)(4), (d)) if the plan is interpreted to mean different things in different places. See Brief for Chief Actuaries as Amici Curiae 5-11.
Respondents and the United States as amicus curiae do not question that deference to plan administrators serves these important purposes. Rather, they argue that deference is less important once a plan administrator has issued an interpretation of a plan found to be unreasonable. But the interests in efficiency, predictability, and uniformity— and the manner in which they are promoted by deference to reasonable plan construction by administrators — do not suddenly disappear simply because a plan administrator has made a single honest mistake.
This case illustrates the point. Consider first the interest in efficiency, an interest that Xerox has pursued by granting the Plan Administrator authority to construe the Plan. On remand from the Court of Appeals, if the District Court had applied a deferential standard of review under Firestone, the question before it would have been whether the Plan Administrator’s interpretation of the Plan was reasonable. After answering that question, the case might well have been over. Instead, the District Court declined to defer, and therefore had to answer the more complicated question of how best to interpret the Plan.
The prospect of increased litigation costs inherent in respondents’ approach does not end there. Under respondents’ and the Government’s view, the question whether a deferential standard of review was required in this case turns on whether the Plan Administrator was interpreting the “same terms” or deciding the “same issue” on remand. See Brief for Respondents 43, 46-48, 53, and n. 13; Brief for United States as Amicus Curiae 13-15, 23. Whether that condition is satisfied will not always be clear. Indeed, petitioners dispute that question here, arguing that the Plan Administrator confronted an entirely new issue on remand— how to interpret the Plan, knowing that specific provisions *519 requiring use of the phantom account method could not be applied to respondents due to a lack of notice. See Brief for Petitioners 50-51. Respondents would force the parties to litigate this potentially complicated “same issue” or “same terms” question before a district court could even decide whether deference is owed to a plan administrator’s view. As we recognized in Glenn, there is little place in the ERISA context for these sorts of “special procedural rules [that] would create further complexity, adding time and expense to a process that may already be too costly for many of those who seek redress.” 554 U. S., at 116-117.
The position of respondents and the Government could interject other additional issues into ERISA litigation. For example, even under their view, the District Court here could have granted deference to the Plan Administrator; the court merely was not required to do so. See Brief for Respondents 43, 49-50, 52-53; Brief for United States as Amicus Curiae 23-24. That raises the question of how a court is to decide between the two options; respondents’ answer is to weigh an indeterminate number of factors, which would only further complicate ERISA proceedings. See Tr. of Oral Arg. 34, 40-45.
This ease also demonstrates the harm to the interest in predictability that would result from stripping a plan administrator of Firestone deference. After declining to apply a deferential standard here, the District Court adopted an interpretation of the Plan that does not account for the time value of money. 472 F. Supp. 2d, at 458; 535 F. 3d, at 119. In the actuarial world, this is heresy, and highly unforeseeable. Indeed, the actuaries tell us that they have never encountered an ERISA plan resembling this one that did not include some adjustment for the time value of money. Brief for Chief Actuaries as Amici Curiae 12.
Respondents’ own actuarial expert testified before the District Court that fairness would require recognizing the time value of money in some fashion. See App. 127a, 130a. *520 And respondents and the Government do not dispute that the District Court’s approach, which does not account for the fact that respondents were able to use their past distributions as they saw fit for over 20 years, would place respondents in a better position than employees who never left the company. Cf. Brief for Respondents 42-43; Brief for United States as Amicus Curiae 32-33. Deference to plan administrators, who have a duty to all beneficiaries to preserve limited plan assets, see Varity Corp., 516 U. S., at 514, helps prevent such windfalls for particular employees.
Finally, this case demonstrates the uniformity problems that arise from creating ad hoc exceptions to Firestone deference. If other courts were to adopt an interpretation of the Plan that does account for the time value of money, Xerox could be placed in an impossible situation. Similar Xerox employees could be entitled to different benefits depending on where they live, or perhaps where they bring a legal action. Cf. 29 U. S. C. § 1132(e)(2) (permitting suit “where the plan is administered, where the breach took place, or where a defendant resides or may be found”). In fact, that may already be the case. In similar litigation over the Plan, the Ninth Circuit also rejected the use of the phantom account method, but held that the Plan Administrator should utilize actuarial principles in accounting for rehired employees’ past distributions — which would presumably include taking some cognizance of the time value of money. See Miller v. Xerox Corp. Retirement Income Guarantee Plan, 464 F. 3d 871, 875-876 (2006); Brief for ERISA Industry Committee et al. as Amici Curiae 8-9. Thus, failing to defer to the Plan Administrator here could well cause the Plan to be subject to different interpretations in California and New York. “Uniformity is impossible, however, if plans are subject to different legal obligations in different States.” Egelhoff v. Egelhoff, 532 U. S. 141, 148 (2001). Firestone deference serves to avoid that result and to preserve the *521 “careful balancing” of interests that ERISA represents. Pilot Life Ins. Co., 481 U. S., at 54.
C
In spite of all this, respondents and the Government argue that requiring the District Court to apply Firestone deference in this case would actually disserve the purposes of ERISA. They argue that continued deference would encourage plan administrators to adopt unreasonable interpretations of plans in the first instance, as administrators would anticipate a second chance to interpret their plans if their first interpretations were rejected. And they argue that plan administrators would be able to proceed seriatim through several interpretations of their plans, each time receiving deference, thereby undermining the prompt resolution of disputes over benefits, driving up litigation costs, and discouraging employees from challenging the decisions of plan administrators at all.
All this is overblown. There is no reason to think that deference would be required in the extreme circumstances that respondents foresee. Under trust law, a trustee may be stripped of deference when he does not exercise his discretion “honestly and fairly.” 3 Scott and Ascher 1348. Multiple erroneous interpretations of the same plan provision, even if issued in good faith, might well support a finding that a plan administrator is too incompetent to exercise his discretion fairly, cutting short the rounds of costly litigation that respondents fear.
Applying a deferential standard of review does not mean that the plan administrator will prevail on the merits. It means only that the plan administrator's interpretation of the plan “will not be disturbed if reasonable.” Firestone, 489 U. S., at 111; see also ibid. (“ Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion’ ” *522 (quoting 1 Restatement (Second) of Trusts § 187)). Thus, far from “impos[ing] [a] rigid and inflexible requirement” that courts must defer to plan administrators, post, at 529, we simply hold that the lower courts should have applied the standard established in Firestone and Glenn.
III
The Court of Appeals erred in holding that the District Court could refuse to defer to the Plan Administrator’s interpretation of the Plan on remand, simply because the Court of Appeals had found a previous related interpretation by the Administrator to be invalid. Because we reverse on that ground, we do not reach the question whether the Court of Appeals also erred in applying a deferential standard of review to the decision of the District Court on the merits.[2]
The judgment of the Court of Appeals for the Second Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

Justice Sotomayor took no part in the consideration or decision of this ease.

 The dissent is wrong to suggest a lack of case support for this interpretation of trust law. Post, at 531-534 (opinion of Breyer, J.). See, e. g., Hanford v. Clancy, 87 N. H. 458, 461, 183 A. 271, 272-273 (1936) (“Affirmative orders of disposition, such as the court made in this case, may only be. sustained if, under the circumstances, there is but one reasonable disposition possible. If more than one reasonable disposition could be made, then the trustee must make the choice” (emphasis added)); In re Will of Sullivan, 144 Neb. 36, 40-41, 12 N. W. 2d 148, 150-151 (1943) (although trustees erred in not providing any support to plaintiff, “the court was without authority to determine the amount of support to which plaintiff *515 was entitled from the trust fund” because “the court has no authority to substitute its judgment for that of the trustees” (emphasis added)); Eaton v. Eaton, 82 N. H. 216, 218-219, 132 A. 10, 11 (1926) (“[The trustee’s] failure to administer the fund properly did not entitle the court to act as a substitute trustee.... [Within the limits of reasonableness the trustee alone may exercise discretion, since that is what the will requires” (emphasis added) (cited in 3 A. Scott & W. Fratcher, Law of Trusts §187.1,. pp. 30-31 (4th ed. 1988))); In re Estate of Marré, 18 Cal. 2d 184, 190, 114 P. 2d 586, 590-591 (1941) (lower court erred in setting amount of payments to beneficiary after ruling that trustees had mistakenly failed to make payment; “[i]t is well settled that the courts will not attempt to exercise discretion which has been confided to a trustee unless it is clear that the trustee has abused his discretion in some manner.... The amounts to be paid should therefore be determined in the discretion of the trustees” (cited in 3 Scott and Ascher 1349, n. 4 (5th ed. 2007))); Finch v. Wachovia Bank & Trust Co., 156 N. C. App. 343, 348, 577 S. E. 2d 306, 310 (2003) (agreeing with lower court that trustee abused its discretion, but vacating the court’s remedial order because it would “strip discretion from the trustee and replace it with the judgment of the court”). See also Brief for Petitioners 40-43.

 The Government raises an additional argument — that the District Court should not have deferred to the Plan Administrator’s second interpretation of the Plan because that interpretation would have violated ERISA’s notice requirements. See Brief for United States as Amicus Curiae 25-26. That is an argument about the merits, not the proper standard of review, and we leave it to be decided, if necessary, on remand.