**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-4740

MOIRA GOLETZ,

Appellant

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(D.C. Civil No. 04-cv-00351)
District Judge:  Honorable Sue L. Robinson

Submitted Under Third Circuit LAR 34.1(a)
May 10, 2010

Before: BARRY, ROTH, <u>Circuit Judges</u> and HILLMAN[*] <u>District Judge</u>

(Opinion Filed: June 7, 2010)

OPINION

---

[*] Honorable Noel L. Hillman, United States District Judge for the District of New
Jersey, sitting by designation.

BARRY, <u>Circuit Judge</u>

Moira Goletz appeals from an order of the District Court granting summary judgment to the Prudential Insurance Company of America ("Prudential") on Goletz's claim for benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"). For the following reasons, we will affirm.

## I. **Background**

Like most ERISA cases, the facts of this case are extensive and convoluted. Fortunately, the legal questions presented in this case require only an overview of the background and procedural history. In 2000, Goletz[1] first applied for disability benefits under the terms of a long-term disability plan (the "Plan") administered by Prudential[2] and offered by her employer. Prudential determined that Goletz qualified for an initial twenty-four months of benefits and paid her claim. After twenty-four months, in order to continue receiving benefits under the Plan, Goletz had to meet a stricter standard—she was entitled to continue receiving benefits only if her condition had rendered her "unable to perform the duties of any gainful occupation[3] for which [she was] reasonably fitted by

---

[1] Goletz is fifty-two and has a high school education. She began working as a full-time customer service representative in 1997. She was later promoted to cardmember advocacy specialist, but went on disability leave in May 2000 due to constant pain in her neck, hands, arms, elbows, and other joints. She has yet to return to work.

[2] Bank One purchased the Plan from Prudential in 2000 for the benefit of Bank One's regular, salaried, and commissioned employees.

[3] "Gainful occupation" was defined as "an occupation, including self employment, that is or can be expected to provide . . . an income equal to at least [70%] of

education, training or experience." (A. at 87.) Prudential determined that she was capable of gainful occupation and denied her claim.

After exhausting her administrative remedies, Goletz filed this ERISA action to recover benefits under the Plan. The evidence consisted of reports and records from several experts, including three physicians who treated Goletz—Dr. Glen Rowe, an orthopedist; Dr. Eric Tamesis, an orthopedist and rheumatologist; and Dr. Michael Bradley, a primary care physician—along with Dr. Patrick Rowe, a Prudential consultant; Dr. Peter Bandera, a physiatrist[4] hired by Prudential to perform an independent medical exam; and vocational consultant Kathleen Koutch. Drs. Rowe and Tamesis each issued reports which corroborated Goletz's subjective complaints of pain. Dr. Bandera, by contrast, concluded that Goletz had "multiple subjective complaints which [did] not correlate objectively," and opined that Goletz could "return to an occupation that would adhere" to certain restrictions. (*Id*. at 203.)

The District Court found that Prudential had "impermissibly used evidence that supported the denial of plaintiff's benefits while ignoring or failing to satisfactorily explain its rejection of evidence supporting the award of such benefits." *Goletz v. Prudential Ins. Co. of America*, Civ., 425 F. Supp. 2d 540, 553 (D. Del. 2006) (*Goletz I*).

_____

[employee's] indexed monthly earnings within 12 months of [employee's] return to work." (A. at 87.)

[4] A physiatrist is a medical doctor specializing in pain management and restoring and enhancing function to those with pain and/or impairments.

Indeed, in its letters to Goletz before this action was filed, Prudential made clear that its decision was based largely on Dr. Bandera's report and did not explain why it paid little heed to the materials submitted by Drs. Rowe and Tamesis.

In addition, the District Court found that Prudential had selectively ignored the advice of its own consultant—Dr. Howe—by failing to hire a new vocational expert to evaluate Goletz, and instead relied on Kouch's prior vocational report, which was issued in 2002. The Court also faulted Prudential for failing to explain whether and how its determination squared with the November 2003 decision of the Social Security Administration ("SSA") granting disability benefits to Goletz. The SSA found that Goletz was disabled because she was unable "to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment." (A. at 219.) Prudential only briefly mentioned the SSA's decision, explaining, in its March 15, 2004 letter denying Goletz's third request for reconsideration, that "Prudential determines eligibility for [long term disability] benefits based on the terms of the Group Policy, separate from the criteria used by the Social Security Administration." (*Id*. at 156.)

The District Court found that the Plan gave Prudential discretion over the claim, but that Prudential had a potential conflict of interest because it both determines whether an employee is eligible for benefits and pays benefits out of its own pocket. Thus, the Court used the now-discredited sliding scale approach and concluded that "a heightened arbitrary and capricious review [was] appropriate." *Goletz I,* 425 F. Supp. 2d at 550-51.

Ruling on the parties' cross-motions for summary judgment, the Court held that Prudential's denial of benefits was arbitrary and capricious and, accordingly, granted summary judgment to Goletz and directed that the case be "remanded" to Prudential.

On remand, Prudential hired two additional independent experts—Dr. Reynold Karr, a rheumatologist, and Dr. R. David Bauer, an orthopaedic surgeon—to evaluate the evidence. Dr. Karr analyzed Goletz's treating physicians' materials and determined that "Ms. Goletz does not have functional impairments relating to inflammatory arthritis of a defined rheumatologic condition from 10/30/2002 forward." (A. at 374.) Dr. Bauer explained that Goletz had "significant subjective complaints without objective findings." (*Id*. at 367.) Prudential also hired Sue Howard, a vocational expert, who identified several employment options for Goletz and found that "[a]ll of [these] occupations exist in the Dover, Delaware MSA," where Goletz lives. (*Id*. at 378-79.) Based on those opinions, Prudential again denied Goletz's claim for benefits.

Goletz and Prudential then returned to court where both parties again filed cross-motions for summary judgment. This time, the District Court ruled in favor of Prudential, finding that its determination was supported by the record. Goletz timely appealed.

This case boils down to three questions. First, has Goletz waived her arguments about whether the language of the Plan entitles Prudential to review under an arbitrary and capricious standard and whether we should continue to use that standard in light of the District Court's conclusion that Prudential's first determination was arbitrary and

capricious?  The answer is yes.  Second, did Prudential pay adequate heed to the opinions

of Goletz's treating physicians?  Again, the answer is yes.  Third, does Prudential owe any

additional explanation as to the apparent inconsistency between its determination in this

case and the SSA's related November 2003 decision finding that Goletz was entitled to

Social Security benefits?  The answer is no.

## II.  Discussion

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §

1132(f).  We have jurisdiction under 28 U.S.C. § 1291.  We exercise plenary review over

an appeal from a grant of summary judgment.  *Jacobs Constructors, Inc. v. NPS Energy*

*Servs., Inc.*, 264 F.3d 365, 369 (3d Cir. 2001).  Summary judgment is appropriate if there

is no genuine issue of material fact and the moving party is entitled to judgment as a

matter of law.  *Id.* (citing Fed. R. Civ. P. 56(c)).  "In making this determination, we must

consider the evidence in the record in the light most favorable to the nonmoving party."

*Id*.

"[A]n ERISA plan administrator with discretionary authority to interpret a plan is

entitled to deference in exercising that discretion."  *Conkright v. Frommert*, ___ U.S. ___,

2010 WL 1558979, at *3 (Apr. 21, 2010).  In according that discretion, we review an

administrator's decisions under an arbitrary and capricious standard.  *Doroshow v.*

*Hartford Life & Acc. Ins. Co.*, 574 F.3d 230, 233 (3d Cir. 2009).  We had previously

applied a heightened form of arbitrary and capricious review for those cases in which an

administrator acts under a conflict of interest, using a "sliding scale" approach to address how much deference should properly be afforded to a conflicted administrator's determination. *See Post v. Hartford Ins. Co.*, 501 F.3d 154, 161 (3d Cir. 2007). However, in the wake of *Metropolitan Life Insurance Co. v. Glenn*, ___ U.S. ___, 128 S.Ct. 2343 (2008) ("*Met Life*"), our sliding scale approach is no longer tenable. *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009).

Nevertheless, courts must still consider conflicts of interest in evaluating whether an administrator's denial of benefits is arbitrary and capricious. *Id*. at 526. *Met Life* does not substantially affect our analysis of Prudential's determination. Indeed, we reach the same conclusion by reviewing Prudential's determination under an arbitrary and capricious standard, bearing in mind Prudential's conflict of interest, as the District Court reached by applying a "heightened arbitrary and capricious" standard.

Goletz argues, for the first time on appeal, that the District Court should have applied a *de novo* standard of review because the language in the Plan does not make clear that Prudential has discretion.[5] Goletz contends that this argument has not been waived because we are always free to consider our standard of review; however, the issue here is not our standard for reviewing the District Court's decision, but rather the District Court's

---

[5] The Plan gives Prudential the kind of discretion that generally triggers an arbitrary and capricious standard of review. The Plan provides that the benefit must be paid "when Prudential determines," (A. at 87), and the Plan makes clear that certain of the evidence must be "satisfactory to Prudential," (A. at 99.).

standard for reviewing the Plan. "[A]bsent exceptional circumstances, an issue not raised in district court will not be heard on appeal." *U.S. v. Anthony Dell'Aquilla, Enters. & Subsidiaries*, 150 F.3d 329, 335 (3d Cir. 1998).

Also waived is Goletz's argument that, because Prudential's handling of this case has already been faulted once by the District Court, we should now forego extending any deference to Prudential's decision and subject it to *de novo* review. This position was all but rejected by the Supreme Court in *Conkright*, in which the Court explained that ERISA plan administrators "make mistakes" and that a "single honest mistake in plan interpretation" does not justify "stripping the administrator of . . . deference for subsequent related interpretations of the plan." 2010 WL 1558979, at *3.

Next, Goletz argues that Prudential improperly denied disability benefits, whether analyzed under a *de novo* or arbitrary and capricious standard of review. As described above, we need only concern ourselves with whether Prudential's interpretation of the Plan was arbitrary and capricious; we conclude that it was not. Goletz contends, however, that Prudential failed to comply with the remand order, which required Prudential to give "at the very least a thorough and fully supported discussion of why [Goletz's treating physicians'] conclusions were rejected." *Goletz I*, 452 F. Supp. 2d at 552.[6] It is difficult

---

[6] The District Court's first opinion, in favor of Goletz, cites our opinion in *Skretvedt v. E.I. DuPont de Nemours and Co.*, 268 F.3d 167 (3d Cir. 2001), in which we held that "[w]e have long recognized that in the analogous area of disability benefits determinations under the Social Security Act, the opinions of a claimant's treating physician[s] are entitled to substantial and at times even controlling weight." *Id*. at 184

– 8 –

to imagine how Prudential could have been more responsive to the Court's instructions. As Prudential explained in its August 17, 2006 letter to Goletz, the Court "noted that [Prudential's] determination letters did not discuss the opinions of Ms. Goletz's treating physicians" and "noted that the speciality of the IME physician (physiatrist) was not the same as Ms. Goletz' [sic] treating physicians (orthopedic or rheumatology)." (A. at 383.) In response, Prudential retained Drs. Karr and Bauer, whose specialities are the same as Goletz's treating physicians, and who both analyzed the medical evidence and concluded that there was no evidence of significant functional impairment.

Finally, Goletz argues that Prudential failed to explain why its determination was inconsistent with the SSA's related November 2003 decision. At first blush, this is troubling because Prudential determined, in contrast to the SSA's finding, not only that Goletz was capable of substantial gainful activity, but that she was capable of earning 70% of her "indexed monthly earnings." Notably, the SSA was presented with different evidence than was available to Prudential. The SSA apparently considered the opinions of Dr. Tamesis and Dr. Rowe, along with that of Nancy Harter, a vocational expert, but the

---

(internal citations and quotations omitted). The Supreme Court has since rejected this position, holding instead that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) (explaining that, unlike Social Security, which is an "obligatory, nationwide Social Security program, [n]othing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan").

SSA's determination lacked the benefit of the experts provided by Prudential in the matter before us.

Goletz cites *Met Life* for support. In *Met Life*, the Supreme Court affirmed the decision of the Sixth Circuit overturning a plan administrator's determination that was inconsistent with a decision issued by the SSA granting disability benefits. 128 S.Ct. at 2343. The Court did not, however, hold that a plan administrator must always reconcile its determinations with those of the SSA. Instead, the Court considered an inconsistency between an administrator's decision and an SSA award as but one factor which tended, in that case, to show that the plan administrator had abused its discretion. The Court found it troubling that "MetLife had encouraged Glenn to argue to the Social Security Administration that she could do no work, received the bulk of the benefits of her success in doing so (the remainder going to the lawyers it recommended), and then ignored the agency's finding in concluding that Glenn could in fact do sedentary work." *Id*. at 2352. In the case before us, there is no reason to view the SSA's contrary determination as evidence of an abuse of discretion given that the SSA considered evidence which was different than the evidence available to Prudential.

### III. Conclusion

We will affirm the order of the District Court.