

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JONATHAN E. RIVKIN, M.D., an
individual,

           Plaintiff - Appellant,

  v.

THE UNION CENTRAL LIFE
INSURANCE COMPANY and SHARP
REES-STEALY MEDICAL GROUP INC.
GROUP LONG TERM DISABILITY
INSURANCE PLAN,

           Defendants - Appellees.

No. 11-55975

D.C. No. 3:09-cv-01136-WQH-
WVG

MEMORANDUM[*]

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted February 7, 2013
Pasadena, California

Before: CALLAHAN, IKUTA, and HURWITZ, Circuit Judges.

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Dr. Jonathan Rivkin appeals the district court's grant of summary judgment in favor of The Union Central Life Insurance Company. We review de novo, *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962 (9th Cir. 2006) (en banc), and reverse.

Union Central's plan pays two kinds of benefits relevant to this case: a "Total Disability Benefit" and a "Residual Disability Benefit." When Rivkin's monthly income does not exceed 20 percent of his pre-disability monthly income, he receives the Total Disability Benefit.[1] By contrast, when Rivkin's monthly income does exceed this 20 percent threshold, he receives the Residual Disability

---

[1] The plan states:

You will be paid a Total Disability benefit if You:
1. become Totally Disabled while insured under this Plan;
2. are Disabled throughout the Elimination Period and remain Disabled beyond the Elimination Period;
3. are under the care of a Physician who is providing treatment for the Injury or Sickness causing the Disability;
4. submit Proof of Disability satisfactory to Us; and
5. are employed, Your Current Monthly Earnings are less than or equal to 20% of Your Average Monthly Earnings.

There is no dispute that Rivkin meets the definition of "Totally Disabled" and otherwise qualifies for a Total Disability Benefit.

Benefit.[2]  To calculate the Residual Disability Benefit, the administrator must first calculate Rivkin's Total Disability Benefit and must then subtract half of Rivkin's monthly income.[3]  To calculate the Total Disability Benefit, the administrator begins with 40 percent of Rivkin's pre-disability monthly income and then

---

[2]  The plan states:
If You are Residually Disabled and have Current Monthly Earnings in excess of 20% of Your Average Monthly Earnings, You will be paid a Residual Disability Benefit if You meet the following qualifications:
1.    You satisfy the Elimination Period with the required number of days of Total Disability and/or Residual Disability and become entitled to receive LTD benefits under this Plan;
2.    You submit satisfactory Proof of Disability to Us that You are Residually Disabled as defined in this Plan; and,
3.    You are earning less than 80% of Your Average Monthly Earnings.

[3] The plan provides:
We will calculate Your Monthly Benefit using the 50% Offset of Earnings method.  To determine Your benefit, calculate Your Total Disability Benefit . . . .  From the Total Disability amount determined, subtract 50% of Your Current Monthly Earnings.  The amount remaining is Your Monthly Benefit.

subtracts certain "Other Income Reductions" that are defined by the plan.[4]  The

plan defines "Other Income Reductions" as follows:

> **What Are The Other Income Reductions?**  Other Income
> Reductions are benefits You are eligible to receive from other sources
> due to Your Disability.  If You receive benefits from any of the other
> sources listed below, they will be used to reduce Your Monthly
> Benefit.

Consistent with this definition, the plan enumerates nine such reductions, including

unemployment benefits, Social Security benefits, disability benefits received from

an automobile policy, and damages intended to compensate for lost earnings.  The

list also includes (as No. 8) "Income from any work for pay or profit not

considered . . . Residual Disability or Rehabilitative Employment."

According to Union Central, Reduction No. 8 includes any income from

part-time or temporary work that is equal to or less than 20 percent of a claimant's

_____

[4] The plan provides three methods for calculating the Total Disability Benefit.  The parties agree that in this case, the Total Disability Benefit is calculated using the Direct Method.  Under this method, the Total Disability Benefit is calculated as follows: "Take the lesser of . . . Your Average Monthly Earnings multiplied by the Direct Benefit Percent shown in the Coverage Schedule [40 percent] . . . [and] subtract all Other Income Reductions, including those for which You were eligible but did not apply or appeal as described in the 'Claims Provisions' section of this Plan."

pre-disability income.[5] Under Union Central's interpretation, when Rivkin receives a Total Disability Benefit (i.e., when he is earning 20 percent or less of pre-disability income), Union Central will reduce his benefit by 100 percent of his earnings. When Rivkin is receiving a Residual Disability Benefit (i.e., when he is earning more than 20 percent of pre-disability income), Reduction No. 8 does not apply, and Union Central will reduce his benefit by 50 percent of his earnings.

This interpretation of the plan is contrary to its plain language. As previously mentioned, the plan defines the category of "Other Income Reductions" as applying to "benefits" Rivkin is entitled to receive from other sources "due to" his disability. The "other sources" listed in the "Other Income Reductions" provision are all consistent with this definition: for example, the list includes disability benefits from an automobile policy, which is a type of benefit a person may be entitled to receive due to a disability. By contrast, income earned by Rivkin from part-time or temporary work is not a "benefit" received "due to" his disability. Union Central does not provide any plausible basis for its conclusion that income from part-time or temporary employment could meet the definition of "Other Income Reductions."

_____

[5] Union Central first offered this interpretation during litigation. Before Rivkin filed suit, Union Central offered or applied other interpretations of the plan.

5

It is an abuse of discretion for a plan administrator to "construe provisions of the plan in a way that conflicts with the plain language of the plan." *Day v. AT & T Disability Income Plan*, 698 F.3d 1091, 1096 (9th Cir. 2012) (quoting *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1472–73 (9th Cir. 1994)), *abrogated on other grounds by Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 872 n.2 (9th Cir. 2008)), *cert. denied*, __ S. Ct. __, No. 12-1144, 2013 WL 1147413 (Apr. 22, 2013). Because Union Central's interpretation of Reduction No. 8 is contrary to the definition of "Other Income Reductions," Union Central abused its discretion in interpreting the plan. As a result, the district court erred in granting summary judgment in favor of Union Central.[6]

**REVERSED AND REMANDED.**

---

[6] Because Union Central's interpretation of the plan was erroneous even under a deferential standard of review, we need not address Rivkin's argument, based on *Conkright v. Frommert*, 130 S. Ct. 1640, 1651 (2010), that the district court should have reviewed Union Central's plan interpretation de novo.