**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 14a0494n.06

**Case No. 10-6131**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| WILLIAM R. CANADA, JR., | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Jul 09, 2014 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| AMERICAN AIRLINES, INC. PILOT | ) | DISTRICT OF TENNESSEE |
| RETIREMENT BENEFIT PROGRAM; | ) | |
| AMERICAN AIRLINES, INC., as Administrator | ) | |
| of the Pilot Retirement Benefit Program, | ) | |
| | ) | O P I N I O N |
| Defendants-Appellees. | ) | |

BEFORE:     BOGGS, COLE, and McKEAGUE, Circuit Judges.

COLE, Circuit Judge.    William Canada, Jr. appeals from a judgment in favor of American Airlines, Inc. Pilot Retirement Benefit Program ("the Plan") and American Airlines, Inc. ("American"), the Plan administrator, in this ERISA action to clarify his rights to future pension benefits.  We must determine whether American properly deferred Canada's pension-benefit payments (after Canada elected to keep flying past the normal retirement age) without compensating him for the deferral with an actuarial increase in the benefits ultimately paid.  Because federal law does not require an actuarial adjustment under these circumstances, and because American did not interpret the Plan's provisions in an arbitrary or capricious manner, we affirm the entry of judgment in favor of American and the Plan on all claims.

## I. BACKGROUND

Federal law permits qualified retirement plans such as the one at issue here to suspend the payment of accrued pension benefits during periods of continued qualifying employment. *See* 29 U.S.C. § 1053(a)(3)(B); I.R.C. § 411(a)(3)(B). ERISA § 203(a)(3)(B) and a corresponding provision in the Internal Revenue Code contemplate that individuals may, for a host of reasons, wish to defer retirement by continuing to work past the normal retirement age identified in their retirement plans. *See* 29 U.S.C. § 1053(a)(3)(B); I.R.C. § 411(a)(3)(B). Employees who continue working past their normal retirement age (i.e., the age when their pension benefits vest) are commonly referred to as being in "Section 203(a)(3)(B) service."

Ordinarily, federal law requires qualified retirement plans to compensate retirees for any deferral of pension payments by way of an actuarial adjustment—or increase in payments—to account for the lost time-value of money. Treas. Reg. §§ 1.411(a)-7(a)(1)(ii), 1.411(c)-1(e)(1). Nevertheless, federal law permits retirement plans to forego making actuarial adjustments for employees who remain in Section 203(a)(3)(B) service. *Contilli v. Local 705 Int'l Bhd. of Teamsters Pension Fund*, 559 F.3d 720, 722 (7th Cir. 2009) (citing 29 U.S.C. § 1053(a)(3)(B)) ("There is an exception to the actuarial-adjustment requirement for a participant who puts off retirement while continuing to work."); *Atkins v. Nw. Airlines, Inc.*, 967 F.2d 1197, 1201 (8th Cir. 1992) (same). As the relevant Treasury Regulation succinctly explains:

> **(2) Employment after Retirement.** No actuarial adjustment to an accrued benefit is required on account of employment after normal retirement age. For example, if a plan with a normal retirement age of 65 provides a benefit of $400 a month payable at age 65[,] the same $400 benefit (with no upward adjustment) could be paid to an employee who retires at age 68.

Treas. Reg. § 1.411(c)-1(f)(2).

That federal law *permits* the suspension of benefits without actuarial adjustments during periods of continued qualifying employment tells only half the story. To fully comply with ERISA, retirement plans must actually "provide" that payments will be suspended, and plans must provide for the suspension before plan participants accrue the benefits at issue. 29 U.S.C. § 1053(a)(3)(B); *see Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 745–46, 750 n.5 (2004). Ultimately, this case boils down to a straight-forward contract dispute. We must determine whether American, as plan administrator, interpreted the Plan in an arbitrary and capricious manner when it concluded that (1) the Plan provided for the suspension of benefits for pilots who continue flying after reaching age sixty and (2) the Plan provided for this suspension before Canada began accruing benefits in 1989.

## II. ANALYSIS

In support of its judgment in favor of American, the district court issued a well-reasoned and thorough opinion that examined the relevant Plan documents and traced their evolution from the 1976 Plan Restatement, which was in effect when Canada began accruing benefits, to the most recent 2009 Plan Restatement. *See Canada v. Am. Airlines, Inc. Pilot Ret. Program*, No. 3:09-0127, 2010 WL 4877280 (M.D. Tenn. Aug. 10, 2010). The court concluded that because the Plan always prohibited participants from receiving pension benefits while actively employed at American, the Plan provided for the "suspension" of retirement benefits during Section 203(a)(3)(B) service, even if the Plan did not label its late-retirement provisions in so many words. *Id.* at *21. Accordingly, the district court granted summary judgment to American and the Plan on all claims. *Id.* at *22. Having reviewed the record and arguments made by the parties, we conclude that we could add little to disposition of this matter and adopt the analysis and conclusions of the district court, with the following points of clarification.

## A. Standard of Review

Because the administrator of the ERISA plan in this case has been granted discretionary authority to determine eligibility for benefits and to construe the terms of the Plan, the district court correctly applied the highly deferential arbitrary-and-capricious standard of review. *Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 328 (6th Cir. 2009) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Moreover, although American both funds the Plan and determines Plan eligibility, the district court properly factored the airline's dual role and inherent conflict of interest into its *application* of the arbitrary-and-capricious standard rather than imposing a heightened standard of review altogether. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115–19 (2008) (adhering to the arbitrary-and-capricious standard of review while eschewing "*de novo* review" or "special burden-of-proof rules" for ERISA conflict-of-interest cases); *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009) (same). We typically review de novo the district court's disposition of an ERISA action, applying the same legal standard as the district court, based only on the administrative record available at the time the plan administrator rendered a final decision. *Kovach*, 587 F.3d at 328 (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 617–19 (6th Cir. 1998)).

Canada goes to great lengths to suggest that American's defense, which relies upon the Plan's late-retirement provisions, is nothing more than a post-hoc litigation rationale that we should view skeptically, or as fatal, to American's decision to suspend his benefits. Ordinarily, we might agree and look more suspiciously upon the decision of a plan administrator who offers one justification to a claimant for a suspension of benefits, only to turn around and offer a different justification to a reviewing court. *See, e.g.*, *Univ. Hospitals of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 848 n.7 (6th Cir. 2000). But this is no ordinary case.

Here, Canada short-circuited the normal benefits-review process by proceeding directly to federal court. He did not present his individual claims to the Pension Benefit Administration Committee, the Plan's named fiduciary for deciding benefits appeals. Although the district court excused Canada's failure to exhaust the Plan's administrative remedies on the grounds of futility, we cannot punish American for relying on a "new" defense that the airline may well have raised in the course of an ordinary administrative appeal if Canada had been required to exhaust. Moreover, the Supreme Court recently held that reviewing courts must afford deference to the discretionary acts of plan administrators not only in their "first efforts to construe the Plan," but also in their second efforts, so long as those efforts are not taken in bad faith. *See Conkright v. Frommert*, 559 U.S. 506, 513–514 (2010) (rejecting a "one-strike-and-you're-out" approach to ERISA plan-administrator deference). Finally, even if we were to agree with Canada and review American's Plan interpretation with "exacting scrutiny," we would reach the same conclusion as the district court and reject his claims for an actuarial adjustment. Canada simply has not shown that American's Plan interpretation was wrong, even under a de novo standard of review.

## B. Framework for ERISA Cases

The district court referred to the traditional summary-judgment framework in evaluating Canada's claims. *See Canada*, 2010 WL 4877280, at *7. As we explained in *Wilkins v. Baptist Healthcare Systems, Inc.*, traditional summary-judgment concepts generally play no role in the adjudication of an ERISA action for benefits brought under 29 U.S.C. § 1132(a)(1)(B) because the district court is limited to the evidence before the plan administrator at the time of its decision (i.e., the administrative record). 150 F.3d at 617–19 (Gilman, J., concurring).[1] As we observed above, however, this is no ordinary ERISA action.

---

[1] In *Wilkins*, Judge Gilman delivered a separate opinion, in which Judge Ryan concurred, which constitutes the opinion of the court with respect to this issue. *See Wilkins*, 150 F.3d at 611. All citations to *Wilkins* in Section II.B. of this opinion refer exclusively to Judge Gilman's controlling opinion therein.

First, as we noted, Canada did not pursue an administrative appeal—an approach that the Plan both permitted and encouraged. Thus, there was no true "administrative record" to which the district court's review was confined. Second, there is an exception to the rule against receiving new evidence at the district-court level "when consideration of that evidence is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator *or alleged bias on its part*." *Id.* at 618 (emphasis added). Canada has alleged plan-administrator bias throughout these proceedings. Under these circumstances, and considering that the parties presented their briefing to the district court in the form of cross-motions for summary judgment, we find no error in the district court's reliance on the summary-judgment framework to guide its analysis.

## C. Mixed Claims for a Determination of Benefits and Breach of Fiduciary Duty

Canada filed suit under 29 U.S.C. § 1132(a)(1)(B) to clarify his rights to future benefits under the terms of the Plan and under § 1132(a)(2) to correct an alleged breach of fiduciary duty. Although Canada's original complaint included a separate breach-of-fiduciary-duty claim under the catch-all remedial provision of § 1132(a)(3), the district court dismissed that count as duplicative of his claim under § 1132(a)(1)(B) for a clarification of his rights to future benefits. *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996); *Wilkins*, 150 F.3d at 615–16.

Thus, Canada's amended complaint presents two claims: (1) a clarification-of-benefits claim under § 1132(a)(1)(B), with any benefit inuring to Canada himself; and (2) a breach-of-fiduciary-duty claim under § 1132(a)(2), with any benefit inuring to the Plan and to Canada. Canada's breach-of-fiduciary-duty claim is premised, in part, on the charge that American interpreted the Plan language solely out of self-interest, to the detriment of the Plan, and in a manner that deprives Canada and other pilots of benefits to which they are legally entitled.

Without expressing any opinion on the support for Canada's breach-of-fiduciary-duty claim on behalf of the Plan, as distinct from the breach-of-fiduciary-duty claim on his own behalf, we affirm the district court's determination that Canada failed to show a cognizable breach of fiduciary duty.

**D.  The Impact of American's Summary Plan Descriptions**

Finally, we note that one of the rationales underlying the district court's opinion denying Canada's claim for benefits has only grown stronger since originally issued.  This is because an intervening decision from the Supreme Court significantly undercuts Canada's repeated reliance on a series of summary plan descriptions ("SPDs") that American furnished to its pilots.

In *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011), the Supreme Court considered whether SPDs constitute legally binding terms of an ERISA plan.  *Id.* at 1876–78.  The Court concluded that while SPDs provide "clear, simple communication" to beneficiaries *about* the plan, their statements are not legally binding plan terms themselves.  *Id.*  In so holding, the Court noted that "[t]o make the language of a plan summary legally binding could well lead plan administrators to sacrifice simplicity and comprehensibility in order to describe plan terms in the language of lawyers."  *Id.* at 1877–78.  Thus, when a plan beneficiary brings suit under 29 U.S.C. § 1132(a)(1)(B) to clarify his rights to future benefits "under the plan," as Canada did here, he may not rely on the contents of SPDs to circumscribe or nullify the plain terms of the plan itself.  *Id.*; *see Engleson v. Unum Life Ins. Co. of Am.*, 723 F.3d 611, 620 (6th Cir. 2013) ("Since *Amara*, we have observed that SPDs are not legally binding, nor parts of the benefit plans themselves." (internal quotation marks omitted)).

Although the district court determined that Canada's reliance on the SPDs was unpersuasive in the first instance, *Amara* makes clear that the court was not even required to consider Canada's arguments in light of the Plan's otherwise unambiguous late-retirement provisions. *Amara* thus further bolsters our adoption of the district court's already well-reasoned opinion.

### III. CONCLUSION

Accordingly, with the foregoing clarifications, we affirm judgment in favor of American and the Plan on the basis of the district court's opinion.