NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3980
_____

AMY PATRICK, M.D.,
Appellant

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the District of Delaware
(District Court Civil No. 1-15-cv-00169)
District Judge:  Honorable Sue L. Robinson

Submitted Under Third Circuit LAR 34.1(a)
May 9, 2017

BEFORE:  AMBRO, RESTREPO, and NYGAARD, *Circuit Judges*

(Opinion Filed: June 7, 2017)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

NYGAARD, *Circuit Judge.*

Appellant Amy Patrick, M.D., filed suit in the District Court challenging her long-term disability insurance provider's decision to offset her monthly benefit payment against income she generated by working part-time at the medical practice where she is a partner. Her long-term disability plan provides for such an offset for any "earnings received" while on disability. Dr. Patrick objected to this reduction, claiming that the income she generated was never received because it went directly to pay overhead costs she owed her practice. We will affirm, and will briefly explain our rationale for doing so. We will dispense with a detailed discussion of the factual and procedural history of this dispute as that background is well-known to the parties.[1]

I.

Dr. Patrick suffered a debilitating injury to her shoulder and underwent surgery in an attempt to repair the damage. The surgery was only partly successful and the damage from her injury prevented her—for a time, at least—from performing her duties as a gastroenterologist with a Newark, Delaware medical group. Dr. Patrick qualified for and received disability payments from the Appellee Reliance Standard Life Insurance Co., under a long-term disability policy (the Plan) offered by her medical practice. The Plan paid Dr. Patrick a monthly benefit, but stipulated that this amount would be reduced if she was ever able to perform work on a limited basis. According to the Plan's "Rehabilitation Provision," if a beneficiary returns to work part-time, the monthly

---

[1] Further, given the parties' familiarity with the record, we will refrain from citing to the Appendix.

payment is reduced by "an amount equal to 50% of earnings received" from their part-time work.

Dr. Patrick was approved for the maximum disability payment in April of 2009. Approximately a year later, Reliance discovered that Dr. Patrick had returned to part-time work and had posted a net income for the month of March, 2010. Reliance notified Dr. Patrick that, pursuant to the Plan, it would reduce her monthly benefit by 50% of the amount of her net monthly income. Dr. Patrick objected to this reduction, and administratively appealed Reliance's decision. She argued, as she has consistently through the course of this litigation, that she had not "received" any earnings because the funds she earned were applied to the large negative balance she owed her medical practice for overhead, staffing, malpractice insurance, etc. In other words, Dr. Patrick contended that because her earnings were used to pay down the debt she owed her medical practice, she had not received any earnings with which Reliance could offset her disability payments. Reliance rejected this argument and reduced her benefits accordingly.

Dr. Patrick did not work between January of 2011 and November of 2013, and again she received the full disability benefit during that time. However, Reliance learned that Dr. Patrick had earned an income in November of 2013, and reduced her disability benefit for that month. Dr. Patrick tried again to challenge this reduction, but the insurance company denied her claim because she had already exhausted her available appeals. Dr. Patrick then turned to the District Court, filing a lawsuit against Reliance for the reduction of her benefits.

3

II.[2]

No one disputes that the Plan is governed by the Employee Retirement Income and Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* Therefore, we review the District Court's legal conclusions de novo, applying the same standard of review to the Plan administrator's benefits determination that was applied in the District Court. *Estate of Schwing v. Lilly Health Plan*, 562 F.3d 522, 524 (3d Cir. 2009). Dr. Patrick and Reliance also agree that the Plan gives discretionary authority to Reliance in order to determine eligibility for benefits or to construe the terms of the Plan. Under the aforementioned standard, "the plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'" *Conkright v. Frommert*, 559 U.S. 506, 521 (2010) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). "[C]ourts reviewing the decisions of ERISA plan administrators or fiduciaries" in civil ERISA cases—such as this one where Plan administrators have such discretionary authority— "should apply a deferential abuse of discretion standard." *Id*. at 525. Consequently, we will only intrude upon Reliance's decision to reduce Dr. Patrick's long term disability benefits if that decision was arbitrary and capricious. *Estate of Schwing,* 562 F.3d at 525–26.[3] That means we will only overturn Reliance's decision to reduce Dr. Patrick's benefits if "it is without reason,

---

[2] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

[3] "In the ERISA context, the arbitrary and capricious and abuse of discretion standards of review are essentially identical." *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 n.2 (3d Cir. 2011). Accordingly, the terms "arbitrary and capricious" and "abuse of discretion" are often used interchangeably in our ERISA case law and in this opinion. *See, e.g., Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 121 n.2 (3d Cir. 2012).

unsupported by substantial evidence or erroneous as a matter of law." *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (internal quotation marks omitted). Under this narrow standard, we cannot substitute our own judgment for that of the plan administrator. *Vitale v. Latrobe Area Hosp.*, 420 F.3d 278, 286 (3d Cir. 2005).[4]

After reviewing the District Court's decision and the record in this case, we conclude that Reliance's interpretation of the Plan was reasonable and, therefore, should not be disturbed. That is, Reliance did not abuse its discretion in offsetting Dr. Patrick's monthly benefit for the time she worked part-time. The Plan clearly permits Reliance to offset the doctor's benefit by any earnings she received from part-time work. Dr. Patrick does not challenge this fact. Instead, she maintains that, regardless of the amount of her actual earnings, those funds were not "received" because they went to pay down a debt

---

[4] In an attempt to get around our prescribed standard of review, Dr. Patrick argues that the language of the Plan is unambiguous and that we, therefore, owe Reliance's interpretation of its language no deference. App. Br. at 16-17. While she acknowledges that we must review Reliance's decision under an abuse-of-discretion standard, she argues that we cannot apply such a deferential standard here because the terms "earnings received" as set forth in the Plan are unambiguous and "not complex," and that we are in as good a position as Reliance to determine what those terms means. App. Br. at 18. That's not how it works. While we might be in as good a position as Reliance to expound on the meaning of those terms, that does not mean we should, or indeed must, do so. That is the point of having a deferential standard of review. We apply an arbitrary and capricious standard of review to Reliance's interpretation of the terms of its long-term disability policy, but that is not akin to giving deference, à la *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), to a plan administrator's interpretation of policy terms. *See Fleisher*, 679 F.3d at 124-25 (explaining that the general principle that courts will construe ambiguous contract terms in favor of the insured does not apply in ERISA cases where the court is applying an abuse-of-discretion standard instead). Indeed, we are not deferring to a plan administrator's interpretation, but review instead whether that interpretation was "reasonably consistent with unambiguous plan language." *Id*. at 121 (quoting *Bill Gray Enters. v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001).

she owed to her medical group. This argument misses the mark because she received the benefit of her earnings by having those funds applied against the deficit she owed her medical practice. That is to say, money may still be earned, even if the funds have never been possessed, so long as the recipient attains its benefit. *See, e.g., Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1005 (8th Cir. 2004) (client received Social Security payments even though those payments were used to offset a tax burden).

Additionally, Dr. Patrick's argument that she did not have the ability to control receipt of her earnings contradicts the record. Simply put, nothing in her medical practice's shareholder agreement required the practice to use any of Dr. Patrick's earnings to pay off her debt. The agreement stipulates that she would be paid a salary and bonuses in addition to receiving retirement and other fringe benefits. Further, this agreement indicates that Dr. Patrick would be charged "Specific Practice-Related Expenses." Lastly, the agreement specifically mentions that any compensation paid to employees will be reconciled with any debts or expenses incurred by that employee. What Dr. Patrick's agreement with her practice does not say is that any earnings are required to offset against the debt she owes the practice.

In sum, Reliance's interpretation of its policy is reasonable in light of its terms, the language of Dr. Patrick's shareholder agreement, and the precedent relied on. This conclusion was reached by the District Court and we agree. We will, therefore, affirm.[5]

---

[5] Reliance also raises the argument that we could affirm the District Court's determination because the statute of limitations has expired. We need not reach this argument, given our conclusion that Reliance's interpretation of its policy was reasonable.