# United States Court of Appeals
## For the First Circuit

No. 17-1428

DIONISIO SANTANA-DÍAZ,

Plaintiff, Appellant,

v.

METROPOLITAN LIFE INSURANCE COMPANY,

Defendant, Appellee,

SHELL CHEMICAL YABUCOA, INC.; BUCKEYE CARIBBEAN TERMINAL, LLC,
f/k/a Shell Chemical Yabucoa, Inc.; IKON GROUP, INC.; JOHN DOE;
JANE DOE; XYZ ADMINISTRATOR, INC.,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Howard, Chief Judge,
Thompson and Barron, Circuit Judges.

Efraín Maceira-Ortiz for appellant.
Frank Gotay-Barquet, with whom Gotay & Pérez, P.S.C. was on
brief, for appellee.

March 29, 2019

**HOWARD**, <u>**Chief Judge**</u>.  This case concerns the denial of long-term disability ("LTD") benefits for Plaintiff-Appellant Dionisio Santana-Díaz ("Santana") under his employee welfare benefit plan ("Plan").  After the Plan's administrator, Defendant-Appellee Metropolitan Life Insurance Co. ("MetLife"), denied Santana's LTD benefits claim, Santana brought suit under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001-1461.  Applying the parties' agreed-upon standard of review, the district court granted judgment on the administrative record to MetLife.  For the reasons discussed below, we **AFFIRM**.

## I.

We begin with the basic facts leading to August 2011, when MetLife denied Santana's claim for LTD benefits under the Plan through his employer, Shell Chemical Yabucoa, Inc.  Shell Chemical employed Santana as an accountant for over 25 years.  Santana submitted a disability claim form for disabilities that arose in late 2007.  MetLife approved the claim, which was for disabilities arising from a mental disorder or illness due to major depression.  MetLife paid Santana benefits under the Plan's limited 24-month benefit duration period, effective as of November 2008.

Over the course of 2010 and 2011, Santana and MetLife exchanged a series of correspondence.  MetLife sent Santana a letter in April 2010 informing him that his limited disability

- 2 -

benefits would expire that November unless MetLife received objective medical information establishing that he was eligible for LTD benefits. In November 2010, MetLife sent Santana another letter, this time terminating his disability benefits on the ground that his disability was a limited-benefit condition.[1] MetLife further explained that "based on review of the information submitted for [Santana's] non psychiatric medical issues, the medical documentation does not support the inability for [Santana] to perform [his] job which is sedentary in nature or any exclusion to the 24 month limitation." The letter also advised Santana of his right to appeal the denial of benefits with MetLife, which he proceeded to do in April 2011. Santana explained in his appeal that the combination of mental and physical conditions rendered him completely disabled from any employment.

In its review of Santana's appeal, MetLife consulted two independent physicians, one for psychiatry and one for occupational medicine. That review resulted in MetLife's August 19, 2011, letter denying Santana's claim ("MetLife's Final Decision"). MetLife's Final Decision shows that in early June 2011, the occupational medicine consultant spoke with Santana's primary care physician, Dr. Catoni. According to MetLife, "Dr.

---

[1] The Plan excluded six physical conditions from the 24-month benefit limit, including, as relevant here, radiculopathies -- defined in the Plan as "[d]isease[s] of the peripheral nerve roots supported by objective clinical findings of nerve pathology."

Catoni indicated to the consultant that [Santana's] main problems were psychological."  Dr. Catoni also told the consultant that Santana could not walk long distances due to diabetic neuropathy, and that arthritis in the shoulders limited Santana's overhead movement.  The consultant noted that although Dr. Catoni stated this, the clinical data provided did not confirm the presence of lumbosacral neuropathy or any diabetic peripheral neuropathy.  Furthermore, "the consultant indicated there were no physical exams, office visits, or any clinical findings provided in the records that supported that these conditions were causing any physical impairment."  Consequently, the consultant concluded that the medical records did not support a limited benefit exclusionary diagnosis of radiculopathies or other enumerated conditions.

On June 9, 2011, MetLife faxed a copy of the consultants' reports to Santana's doctors, requesting that they submit any comments on the reports.  Dr. Catoni responded, expressing concern about the occupational medicine consultant's report, which stated that there was no evidence of diabetic polyneuropathy.  He noted his office record from February 25, 2011, in which the condition was "well documented," and he accordingly sent additional records to MetLife.  MetLife directed the occupational medicine consultant to review the file further, after which the consultant stated that "he still had no physical examinations, objective findings or office visit reports that supported that the diagnosis of diabetic

peripheral neuropathy led to physical impairment and consequently restrictions and limitations on work abilities."

Subsequently, MetLife's Final Decision letter denied Santana's claim.  In regard to Santana's doctors' diagnoses of diabetic polyneuropathy and other conditions, the letter explained that "although your physicians indicate [that] you have these diagnoses . . . [t]he diagnosis of a medical condition alone does not support an inability to function or support a disabling condition."  Thus, in line with its consultant's findings, MetLife concluded that "the medical information provided is limited and does not support that any of these conditions alone or in combination would preclude [Santana] from performing [his] own sedentary job as an accountant."

After exhausting the Plan's administrative remedies, Santana began this action on August 18, 2013, filing suit under ERISA, 29 U.S.C. § 1132(a)(1)(B), against MetLife, and others, in the federal district court for Puerto Rico.  Santana claimed that MetLife unreasonably, arbitrarily, and capriciously denied him LTD benefits under the Plan.  In May 2014, MetLife moved for summary judgment.  The district court granted summary judgment in MetLife's favor in January 2015, holding that the Plan's statute of limitations barred Santana's complaint.  Santana appealed the district court's order, and, in March 2016, we reversed, holding that the contractual statute of limitations did not apply because

MetLife failed to advise Santana of the deadline for seeking judicial review of its decision. Santana-Díaz v. Metro. Life Ins. Co., 816 F.3d 172 (1st Cir. 2016). In late 2016, back in the district court, the parties cross-moved for judgment on the administrative record. In March 2017, the district court found that MetLife acted reasonably, and thus granted MetLife's motion. The district court entered final judgment the next day, and Santana timely appealed.

## II.

### A.

We review the district court's judgment on the administrative record de novo. Buffonge v. Prudential Ins. Co. of Am., 426 F.3d 20, 28 (1st Cir. 2005).

Here, we must determine whether MetLife's denial of Santana's LTD benefits was "arbitrary, capricious or an abuse of discretion." See id. To that end, we consider the text of the ERISA plan and the plain meaning of the words used therein, which cabin the plan's administrator's discretion. See Colby v. Union Sec. Ins. Co. & Mgmt. Co. for Merrimack Anesthesia Assocs. Long Term Disability Plan, 705 F.3d 58, 65 (1st Cir. 2013). In such plans, "the employer (or an insurance company that stands in the employer's shoes) must spell out exclusions distinctly." Id. at 65-66.

Further, under ERISA, a disability benefits denial must "set[] forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133. A plan administrator's decision "must be reasoned and supported by substantial evidence" -- "[i]n short, [it] must be reasonable." Ortega-Candelaria v. Johnson & Johnson, 755 F.3d 13, 20 (1st Cir. 2014) (internal quotation marks omitted) (citing Colby, 705 F.3d at 62). If the plan administrator's interpretation of the plan is reasonable, then it "will not be disturbed." Conkright v. Frommert, 559 U.S. 506, 521 (2010) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989)). In deciding whether an interpretation of a plan is reasonable, several other circuits have advanced various specific standards, including looking to the consistency of an administrator's construction with the plain meaning of the plan or looking to several guiding factors. See D&H Therapy Assocs., LLC v. Bos. Mut. Life Ins. Co., 640 F.3d 27, 37-38 (1st Cir. 2011) (summarizing standards in the Second, Third, Fourth, Fifth, Seventh, Eighth, Ninth, and D.C. circuits). We consider these standards instructive but do not adopt them or any specific guiding factors. Id. at 38.

Santana highlights several purported deficiencies with the MetLife claims administrators' review and denial of his LTD benefits claim. First, Santana argues that MetLife failed to consider the conditions documented by Santana's treating

physician, Dr. Catoni, and his physiatrist,[2] Dr. Maldonado. Second, he claims that MetLife inconsistently interpreted the Plan, to his detriment. Third, he argues that MetLife denied his claim without providing him with sufficient information regarding the requisite showing to qualify for LTD benefits. Finally, Santana argues that MetLife acted in an arbitrary and capricious manner by adding a "functional limitations" criterion as an additional ground for exclusion of benefits. We address each of Santana's challenges in turn.

**B.**

Santana chiefly argues that the Plan Administrator's denial of LTD benefits to Santana was arbitrary and capricious because the administrator cherry-picked evidence it preferred while ignoring significant contrary evidence. In support, Santana relies largely on the discussion in Cowern v. Prudential Insurance Co. of America, 130 F. Supp. 3d 443 (D. Mass. 2015) (denying cross motions for summary judgment in ERISA action challenging administrator's decision to terminate benefits). In Cowern, the district court concluded that the administrator acted arbitrarily and capriciously by relying on selective comments in a doctor's

---

[2] Physiatrists, specialists in physical medicine and rehabilitation, treat a range of conditions focusing on the musculoskeletal system.

report to deny the claim, ignoring other statements in the report that tended to support the claim. Id. at 464-66.

The Supreme Court has recognized such cherry-picking as a factor to support setting aside a plan administrator's discretionary decision. See Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 118 (2008) (affirming the Sixth Circuit's reversal of the plan administrator's decision, in part because "MetLife had emphasized a certain medical report that favored a denial of benefits, had deemphasized certain other reports that suggested a contrary conclusion, and had failed to provide its independent vocational and medical experts with all of the relevant evidence."). Other circuits have done the same. See, e.g., Love v. Nat'l City Corp. Welfare Benefits Plan, 574 F.3d 392, 397-98 (7th Cir. 2009) ("While plan administrators do not owe any special deference to the opinions of treating physicians . . . they may not simply ignore their medical conclusions or dismiss those conclusions without explanation." (internal citation omitted)); Winkler v. Metro. Life Ins. Co., 170 F. App'x 167, 168 (2d Cir. 2006) ("An administrator may, in exercising its discretion, weigh competing evidence, but it may not, as MetLife did here, cherry-pick the evidence it prefers while ignoring significant evidence to the contrary.").

Here, assuming without deciding that an insurer's cherry-picking of favorable evidence alone may be grounds for

reversal, Santana cannot show that MetLife was guilty of that in processing his claim. Santana asserts that MetLife cherry-picked evidence and failed to consider the conditions documented by Dr. Catoni and Dr. Maldonado. Santana concludes that, contrary to MetLife's Final Decision, his medical records include "objective clinical findings" that he had a diagnosis of radiculopathies. This argument fails because MetLife did in fact consider the evidence that Santana alleges that it overlooked, but MetLife determined that the evidence did not satisfactorily prove that Santana was eligible for LTD benefits under the Plan.

Santana first suggests that MetLife ignored two progress notes from Dr. Catoni, one sent to MetLife on August 5, 2010, and the second dated February 25, 2011, both of which included a diagnosis of polyneuropathy, among other conditions. The record belies this contention. As MetLife's Final Decision states, MetLife's consultant reviewed Dr. Catoni's progress notes and "he found no objective data from [those] notes to support functional limitations." This is the crux of the matter: Even if Dr. Catoni's notes established that Santana suffered from polyneuropathy, MetLife concluded that the records "failed to support any restrictions or limitations based on this diagnosis."

Next, Santana draws our attention to a late-2010 record from Dr. Maldonado that MetLife purportedly ignored regarding an electromyogram ("EMG") -- but like Dr. Catoni's report, this record

- 10 -

is also noted in MetLife's Final Decision. Specifically, MetLife's Final Decision letter shows that its review of Santana's administrative appeal included "medical records from Dr. Maldonado which included EMG/NCS studies dated November 15, 2010." MetLife's consultant's report notes the November 2010 EMG nerve study with Dr. Maldonado, stating somewhat cryptically: "EMG Nerve Study; Peripheral Motor Sensory Polyneuropathy; Right Femoral Nerve Lesion." MetLife's letter does not state what its consultants made of the medical records that Dr. Maldonado provided, particularly the November 2010 EMG.

According to Santana, the November 2010 EMG study shows that Dr. Maldonado had diagnosed him with "Peripheral Motor Sensory Polyneuropathy; Right Femoral Nerve Lesion," which constitutes objective clinical findings of radiculopathies. He argues that this "finding" sustains Dr. Catoni's findings of diabetic polyneuropathy in his progress notes. But his position takes too much liberty with the evidence at hand. Despite the repeated references in the briefing, Santana does not actually identify the EMG in the record. Rather, he points to the notation in MetLife's consultant's report. While Santana views this as objective clinical findings of radiculopathies, MetLife was not so persuaded. It is not clear from the face of that record what the noted items mean, much less what they intend to show or prove.

Ironically, Santana's highlighting of Dr. Catoni's statement and the EMG notation in the consultant's report undermines his argument by drawing attention to MetLife's consideration of these documents. MetLife's conclusion that these records failed to show that Santana was physically disabled under the Plan is reasonably supported by the record and thus not arbitrary or capricious cherry-picking.

## c.

Next, Santana asserts that MetLife also acted arbitrarily by treating medical evidence inconsistently. In support, he cites a June 2013 letter from MetLife regarding the reinstatement of Santana's life insurance benefits. That letter stated that "[t]he conditions that have been considered in the coverage reinstatement were major depressive disorder, degenerative disc disease, diabetes mellitus type 2, diabetic polyneuropathy, chronic pain of shoulder, high blood pressure, asthma and hypothyroidism." From this statement noting that MetLife considered, among other things, diabetic polyneuropathy to reinstate life insurance benefits, Santana concludes that MetLife did not consistently apply and interpret the conditions to qualify for LTD benefits.

This is a false equivalence. Contrary to Santana's assertion, there is no evidence that the criteria to qualify for life insurance benefits is the same as the criteria to qualify for

LTD benefits. Life insurance is not included in the Plan's coverage for LTD benefits, further suggesting that the two involve separate inquiries. Because there is no indication that MetLife reinstated Santana's life insurance coverage because it found him to be disabled due to diabetic polyneuropathy, Santana has failed to identify any inconsistent treatment by MetLife on the disability determination. Accordingly, the comparison to his life insurance coverage offers no basis to find MetLife's disability determination unreasonable.

**D.**

We turn now to the dispute over the required proof of Santana's disability. The Plan states that "to receive benefits under This Plan, you must provide to us at your expense, and subject to our satisfaction," documents showing proof of disability. Santana argues that MetLife failed to provide him with sufficient information regarding the requisite showing to qualify for LTD benefits. To that end, he claims that the phrase "to our satisfaction" is ambiguous and is thus procedurally flawed because it does not provide sufficient notice to Santana of what constitutes satisfactory objective evidence. Ultimately, this assertion rings hollow.

A plan administrator is entitled to define ambiguous terms regarding proof of disability so long as its interpretation is reasonable. See <u>Pralutsky</u> v. <u>Metro. Life Ins. Co.</u>, 435 F.3d

833, 839 (8th Cir.), cert. denied, 549 U.S. 887 (2006) (holding that where a plan does not define the "proof" or "documentation" sufficient to establish disability, it was not unreasonable for MetLife to interpret the plan to require objective evidence).

MetLife told Santana that he had to submit current objective medical information that would establish that his condition qualified him for LTD benefits under the Plan. MetLife's Final Decision also emphasized that a diagnosis of a physical condition does not automatically entitle Santana to benefits under the Plan. In other words, MetLife required two types of objective evidence: (1) to establish a qualifying condition, such as radiculopathies, and (2) to show that the condition caused Santana to be disabled under the Plan. Santana failed to do so. MetLife's Final Decision explained that the evidence provided lacked any "physical examinations, objective findings or office visit reports that supported that the diagnosis of diabetic peripheral neuropathy . . . would preclude [Santana] from performing [his] sedentary job as an accountant."

Santana's attempt now to characterize the plain language of the claims process -- language that the Plan expressly gave MetLife the discretion to interpret -- as procedurally defective is unconvincing. We find no abuse of discretion here because MetLife had the discretion to assess the sufficiency of proof

offered, and the objective evidence sought was reasonable to determine Santana's eligibility for LTD benefits under the Plan.

**E.**

Santana's last challenge posits that MetLife acted arbitrarily and capriciously by considering the functional limitations of his condition. Considering functional limitations in connection with a physical disability claim, however, does not constitute an arbitrary additional criterion to allow exclusion from LTD benefits. On the contrary, "[w]hen certain illnesses do not 'lend themselves to objective clinical findings,' the proper approach is to consider 'the physical limitations imposed by the symptoms of such illnesses [that] do lend themselves to objective analysis.'" Al-Abbas v. Metro. Life Ins. Co., 52 F. Supp. 3d 288, 297 (D. Mass. 2014) (quoting Boardman v. Prudential Ins. Co. of Am., 337 F.3d 9, 17 n.5 (1st Cir. 2003)). Furthermore, the discussion of Santana's functional limitations points to the threshold question of whether he is disabled under the Plan.

The Plan's definition of "disability" covers conditions that prevent an individual from making 80 percent of pre-disability earnings in one's occupation for any employer in the local economy. Functional limitations caused by an alleged physical disability are reasonably part and parcel of the disability assessment. Therefore, MetLife did not act arbitrarily by considering the

- 15 -

presence (or absence) of such functional limitations in assessing whether Santana was disabled under the Plan.

### III.

On this record, MetLife's decision to deny LTD benefits to Santana based on physical disability was reasonable and substantially supported by the evidence at hand. The administrative record shows a reasonably thorough claims process that included communications between not just MetLife and Santana, but also between the medical consultants and attending physicians involved in Santana's care and assessment.

For the foregoing reasons, we **AFFIRM** the district court's order granting judgment to MetLife.