# United States Court of Appeals
## For the First Circuit

Nos. 18-1885, 18-2027

JOHN LAVERY,

Plaintiff, Appellee,

v.

RESTORATION HARDWARE LONG TERM DISABILITY BENEFITS PLAN;
AETNA LIFE INSURANCE COMPANY,

Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Lynch, Circuit Judge,
Souter,[*] Associate Justice,
and Kayatta, Circuit Judge.

Lori A. Medley, with whom Kenneth J. Kelly and Epstein Becker
& Green, P.C. were on brief, for appellants.
Stephen Churchill, with whom Fair Work, P.C. was on brief,
for appellee.

September 3, 2019

---

[*] Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**KAYATTA**, **Circuit Judge**. After being diagnosed with malignant melanoma, John Lavery applied for benefits under his employer's long-term disability benefits plan, which Aetna Life Insurance Company administered and funded. After Aetna denied Lavery's application under the plan's exclusion for disabilities caused by pre-existing conditions, Lavery brought this lawsuit in federal district court against Aetna and the plan, alleging that the denial of his disability benefits claim violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. The district court agreed with Lavery and awarded him back benefits, interest, fees, and costs. The defendants appealed. For the following reasons, we affirm and remand for any further proceedings that may be necessary.

**I.**

**A.**

Restoration Hardware offers qualifying employees long-term disability insurance coverage through the "Restoration Hardware Long Term Disability Benefits Plan" ("Plan"). The Plan, underwritten by Aetna Life Insurance Company, is an employee benefits plan governed by ERISA. Aetna is also the Plan's claims administrator.

The Plan contains a "pre-existing conditions" clause that excludes coverage for certain disabilities. It states:

> Long Term Disability Coverage does not cover any disability that starts during the first 12 months of your current Long Term Disability Coverage, if it is caused or contributed to by a "pre-existing condition."
>
> A disease or injury is a pre-existing condition if, during the 3 months before the date you last became covered:
>
> - it was diagnosed or treated; or
> - services were received for the disease or injury; or
> - you took drugs or medicines prescribed or recommended by a physician for that condition.

The three-month period before the coverage date is referred to as the "look-back" period.

Lavery worked for Restoration Hardware, first as a "Construction Associate" and then as a "Regional Facilities Manager/Store Facilities Leader." On April 14, 2014, Lavery sought medical attention for a skin lesion on his back that had been present for six months. His primary care physician, Dr. Anthony Lopez, observed that the lesion might be basal-cell carcinoma. He referred Lavery to a dermatologist. Dr. Lopez did not recommend any other actions, provide any treatment, prescribe any medications, or take any other action himself.

On June 10, 2014, Lavery was examined by a dermatologist, Dr. Eileen Deignan, who decided to biopsy the lesion. On June 19, 2014, Dr. Deignan diagnosed the lesion as malignant melanoma, and Lavery underwent surgery on June 30 to

have the tumor and certain lymph nodes removed. Dr. Lopez later declared that he was surprised to learn that Lavery was diagnosed with malignant melanoma and that he had not discussed "any treatment, recommendations or medications for malignant melanoma with Mr. Lavery during the April 25, 2014[,] appointment."

Lavery stopped working on September 30, 2014, subsequently claimed disability, and began receiving short-term disability benefits because of the malignant melanoma. In late January 2015, Lavery's claim was converted to a claim for long-term disability coverage. Aetna informed Lavery:

> According to the information in your file, your coverage under the Restoration Hardware, Inc. plan became effective on 06/01/2014 and you have claimed disability as of 9/30/2014. Your coverage was in effect for less than 12 consecutive months as of 9/30/2014, thus we must determine whether you received medical treatment/services, or were prescribed medication during the three month period between 3/1/2014 and 5/31/2014.

Lavery's claim was assigned to Therese Leimback, an Aetna disability benefits manager (DBM). Leimback referred the claim to Pedro Cortero, an internal clinical consultant, to perform a "pre-existing condition review." In his assessment on March 25, 2015, Cortero stated:

> There is no evidence of a definitive diagnosis and management rendered for [Lavery's] malignant melanoma during the look back period. Dr. Lopez assessment on 4/25/14 was approx. 5 mm raised lesion on R lower back questionable for BCC [basal-cell carcinoma]

- 4 -

with referral to dermatology. The lesion may be present for the past six months but remained undiagnosed. Definitive diagnosis was therefore confirmed only after a wide local excision and biopsy on 6/30/14 which has confirmed his melanoma and Basal cell Carcinoma (BCC) was ruled out.

That same day, Leimback acknowledged Cortero's clinical assessment and made an internal note that she would "recommend approval of [Lavery's] claim and obtain updates as recommended by clinical."

Nevertheless, four days later, Leimback's supervisor, Kathy Leonard, wrote that "[Leimback] recommend[ed] denial due to pre ex condition." Leonard further stated that she "agree[d] [that Lavery] was seen/treated during the look back period" and concluded that Lavery's claim should be denied. Lavery's claim file contains nothing from Leimback herself confirming this about-face. Nor does it contain any explanation for the change in Leimback's position.

Leimback sent Lavery a denial letter on March 30, 2015, stating in relevant part:

> Based on the clinical review of the medical records we received, <u>we have concluded that you received medical treatment during the pre-existing condition period of March 1, 2014 and May 31, 2014 for a skin lesion, which was diagnosed as melanoma of skin</u>. As such, your Long Term Disability claim has been denied, as your current disability is a pre-existing condition as defined by the plan.

(Emphasis added.)

- 5 -

Lavery appealed this decision pursuant to Aetna's administrative procedures. Leimback referred Lavery's appeal to another internal clinical consultant, Tyler Thornton. Thornton's clinical review led him to conclude that Aetna erred in concluding that Lavery had received medical treatment for the disabling condition during the look-back period. He wrote:

> In this case Dr. Lopez noticed the red spot on [Lavery's] back during the look back period 4/25/14 and was concerned for a possible basal cell carcinoma. There was no definitive diagnosis made and no prescribed treatment. [Lavery] then saw the dermatologist after the look back period and was diagnosed with stage iii malignant melanoma by biopsy on 6/19/14. While [Lavery] had a red spot on his back during the look back period, the record is clear that [Lavery] was not diagnosed or treated for the disabling condition of stage iii malignant melanoma until after the biopsy which is after the look back period. The documentation supports overturn of the prior pre ex decision.

(Emphasis added.)

Without indicating that she had ever thought that Lavery's claim should be denied, Leimback again entered an internal note favorable to Lavery, this time stating that the second clinical assessment supported overturning the prior decision, and that the "Appeal Triage Determination" was that Lavery's claim would be reinstated. In a follow-up note, Leimback recorded the following: "DBM will rec[ommend] approval and reinstatement.

Dis[ability] supported and not pre-ex with add[itiona]l medical rec[ords]."

On September 8, 2015, a note was added to Lavery's claim file by Catherine Irelan, a member of Aetna's Appeal Triage Unit. Subtly but materially expanding the previously stated reasons given to Lavery for denial, Irelan wrote:

> [Lavery] received <u>medical treatment, care, or services for the disease or injury</u> during the look-back period; the red lesion or mole substantially contributed to the disabling condition of malignant melanoma. Since the red lesion was examined and services occurred during the look-back period the condition is pre-ex.

(Emphasis added.)

On September 9, 2015, Ashley Carey, an appeal coordinator, upheld Irelan's decision to reject Lavery's appeal of his claim denial. Continuing Aetna's move away from the original basis for the denial as communicated to Lavery (receipt of medical treatment), Carey did not claim that Dr. Lopez's examination constituted the requisite service or treatment for the disabling condition. Instead, Carey wrote that denying Lavery's claim was appropriate because Lavery "was referred for treatment (rec'd services)" by Dr. Lopez in April. Carey also announced that Lavery's effective date of coverage was actually July 1, 2014, not June 1, 2014, per changes made to the Plan on June 23, 2014, which were retroactively effective on May 1, 2014, instituting a thirty-

day probationary period from the date of hire before coverage becomes effective.  As a result, Carey wrote, the look-back period for Lavery's claim was actually April 1, 2014 to June 30, 2014, encompassing Dr. Deignan's diagnosis of Lavery's malignant melanoma.

On September 11, 2015, Carey sent Lavery a letter containing Aetna's final decision rejecting his appeal of the denial of his long-term disability benefits claim.  The letter provided a two-part rationale.  First, Aetna denied Lavery's claim on the ground that he "was seen, treated, and diagnosed with malignant melanoma in the [April to June 2014] look back-period."  Second, even assuming that the other, initial look-back period applied, Lavery's condition "would still be considered pre-existing as he was seen for the spot on his back that caused the diagnoses and the pre-existing clause . . . does not cover any disability that is caused by or substantially contributed to, a pre-existing condition."  (Emphasis added.)  Before receiving this letter closing out his administrative appeal, Lavery had not been told that Aetna considered his effective date of coverage to be July 1, 2014.[1]  Nor had Aetna previously told him that it regarded

---

[1] On October 10, 2014, Restoration Hardware told Aetna that Lavery's effective date of coverage was June 1, 2014.  On January 23, 2015, Restoration Hardware again stated that Lavery's effective date of coverage was June 1.  Aetna, in turn, initially and consistently told Lavery, before denying his appeal, that his effective date was June 1.

the pre-existing condition exclusion to have been triggered even using the original look-back period merely because "he was seen for the spot . . . that caused the diagnoses."

**B.**

Lavery filed a complaint in federal district court on February 27, 2017, alleging a wrongful denial of long-term disability benefits in violation of ERISA, 29 U.S.C. § 1001 et seq. After the parties eventually filed cross-motions for summary judgment based on the claim record filed by Aetna, the district court ruled in favor of Lavery, ordering Aetna to allow Lavery's long-term disability benefits claim. Lavery v. Restoration Hardware Long Term Disability Benefits Plan, No. CV 17-10321, 2018 WL 3733936, at *7 (D. Mass. Aug. 6, 2018). The district court also awarded Lavery $27,752.50 in attorneys' fees, $400 in costs, and $17,123.07 in prejudgment interest. The defendants timely appealed both the order to pay benefits and the award of fees, interests, and costs.

**II.**

**A.**

The defendants argue that Lavery's April 2014 office visit with Dr. Lopez sufficiently qualified his malignant melanoma as a pre-existing condition during the March 1, 2014, to May 31, 2014, look-back period (the "initial look-back period"). Our assessment of this argument turns in the first instance on the

Plan's language. In accordance with that language, the pivotal question is whether at that April 2014 office visit (or at any point between March 1 and May 31) any of the following occurred: (1) Dr. Lopez "diagnosed or treated" the melanoma; (2) Lavery "received" services "for the" melanoma; or (3) Lavery "took drugs or medicine prescribed or recommended" by Dr. Lopez "for [the] condition."

Lavery contends that because Dr. Lopez did not think he had melanoma and simply referred him to another doctor, Dr. Lopez could not have diagnosed, treated, provided services for, or provided drugs or prescriptions for "the disease or injury" that caused Lavery's subsequent disability. Rather, argues Lavery, Dr. Lopez preliminarily diagnosed a different, non-disabling disease and provided no treatment, services, or drugs for it. He simply referred Lavery to another doctor for a second opinion. That second doctor then correctly diagnosed the melanoma on June 19 and, later that month, provided treatment and services "for the [melanoma]."

We previously found materially identical plan language ambiguous. See Hughes v. Bos. Mut. Life Ins. Co., 26 F.3d 264, 269-70 (1st Cir. 1994) (interpreting the phrase "treatment for a sickness or injury" (internal quotations omitted)). One might reason that a doctor could not be said to diagnose, treat, or provide anything "for" a disease or injury if the doctor did not

- 10 -

know or believe that the disease or injury even existed. See id. at 269. On the other hand, one might more broadly construe the exclusion to include treatment or services provided for "any symptom which in hindsight appears to be a manifestation of the [disabling sickness or injury]." Id.

So, how do we resolve that ambiguity? In Hughes, the plan administrator claimed no discretion under the plan. We therefore invoked the standard rules for interpreting insurance policies, narrowly construing ambiguous language against the insurer under the doctrine of contra proferentum. Id. at 268. Here, though, the Plan contains a clause plainly reserving to Aetna discretionary interpretation authority. The existence of this clause requires that we defer to Aetna's reasonable reading of the Plan unless Aetna's decision to deny a benefits claim was arbitrary and capricious. See Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc., 852 F.3d 105, 111 (1st Cir. 2017).

Our assessment of whether a decision under a plan is arbitrary and capricious can turn on "several different considerations," often case-specific. Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 117 (2008) ("[A]ny one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance."). In Glenn, the Supreme Court considered one such factor: whether the party deciding the

- 11 -

benefits claim suffered from a structural conflict of interest. Id. at 108. Glenn also recognized "procedural unreasonableness" as an important factor to consider in deciding whether to set aside a discretionary decision. Id. at 118. Glenn otherwise did not either describe or limit what other factors might be considered. The circuit courts have since identified many such factors and, in some instances, have developed standards and tests. See D&H Therapy Assocs., LLC v. Bos. Mut. Life Ins. Co., 640 F.3d 27, 37-38 (1st Cir. 2011) (summarizing various circuits' standards and tests). We have considered the standards of other circuits as instructive only and have not adopted a one-size-fits-all list of factors. See Santana-Díaz v. Metro. Life Ins. Co., 919 F.3d 691, 695 (1st Cir. 2019). Recognizing the case-by-case nature of these inquiries, for purposes of this case we find it helpful to frame our analysis by asking a simple question: To what extent has Aetna conducted itself as a true fiduciary attempting to fairly decide a claim, letting the chips fall as they may? To the extent Aetna has not so conducted itself in deciding Lavery's claim, we would tend to move in the direction of viewing its decision as arbitrary and capricious rather than fair and reasoned.

To answer that question, we turn first to Aetna's structural conflict of interest. We have held that "a conflict exists whenever a plan administrator, whether an employer or an insurer, is in the position of both adjudicating claims and paying

awarded benefits." Denmark v. Liberty Life Assur. Co. of Bos., 566 F.3d 1, 7 (1st Cir. 2009) (citing Glenn, 554 U.S. at 112-15). There is no doubt that such a conflict is present here, as Aetna is both the Plan's underwriter and claims administrator. That said, Aetna produced evidence showing steps it has taken to minimize the effects of this conflict. Such precautions would normally cause us to afford little to no weight to Aetna's structural conflict. See Glenn, 554 U.S. at 117 (instructing that the conflict-of-interest factor "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy"). However, as the remainder of our analysis will show, we find that Aetna's behavior suggests that its structural conflict of interest continued to play a role in its handling of Lavery's benefits claim. See id. ("[A] conflict of interest . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision . . . .").

        To explain why this is so, we begin with DBM Leimback's first decision. Aetna in its brief tells us that only DBMs may make disability benefits determinations. Fully conversant with the facts and the Plan language and armed with a clinical review, Leimback concluded that Lavery was entitled to benefits. The record then reflects that, after she communicated with a superior,

the superior wrote that Leimback "recommend[ed] denial due to pre ex condition."  The record is silent as to how or why Leimback reversed course, assuming she in fact did so.

Of course, we know of no reason why a person in Leimback's position cannot change her view.  She may have made a mistake.  The superior may have provided information that she had overlooked.  Or the superior may have simply convinced her by the force of reason.  We certainly offer no intimation that the mere fact that a claims reviewer changed her mind suggests a nefarious motive.

Here, though, the record further shows that when weighing in a second time, Leimback persisted in concluding that Lavery was entitled to coverage.  She specifically concluded again that the disability was "supported and not pre-ex."  And this judgment, too, was directly supported by another clinical technician.  Nevertheless, yet again, a superior entered the picture, resulting in a 180-degree change, and the record once more contains no explanation even acknowledging that change.  Shortly thereafter, Aetna denied Lavery's appeal.

The record also evinces something of a hunt for a reason to deny Lavery's claim.  The original denial was predicated upon the conclusion that Lavery "received medical treatment during the [initial look-back period]."  The second clinical technician -- who presumably was consulted because of his familiarity with

medical practices -- flatly opined that the "record is clear that [Lavery] was not . . . treated for the disabling condition" during the initial look-back period. Rather than retracting its denial, Aetna instead internally justified it with two new rationales: (1) during the initial look-back period, Lavery "was seen for the spot on his back . . . that caused the [later] diagnosis"; and (2) a different, later look-back period applied, during which the melanoma was diagnosed and treated. As we will discuss, Aetna's last-minute turn to this latter rationale -- without giving Lavery a chance to reply -- plainly violated ERISA regulations prohibiting the use of new or additional rationales for denying a benefits claim without affording the claimant a reasonable opportunity to respond. See 29 C.F.R. § 2560.503-1(h)(4)(ii).

Aetna's claim file for Lavery looks very little like one would expect it to look were Aetna proceeding without regard to its own interest. With two clinical technicians conversant in construing office-visit records and presumably knowledgeable as to when a doctor treats an illness, as well as one DBM who twice reviewed the claim and found the conditions for triggering the pre-existing exclusion inapplicable, one would expect to see in the record some explanation for why the superiors overruled these consistent judgments. One would also not expect to see what looks very much like a false statement that Leimback initially recommended denial of Lavery's claim. Cumulatively, the foregoing

- 15 -

record of internally inconsistent positions, changing rationales, missing explanations, and regulatory violations paints a picture that starts to look quite like the "procedural unreasonableness" cited by Glenn as an important factor for our consideration.

Of course, it is possible that we are simply seeing a shortfall in good documentation rather than a manifestation of Aetna's conflicted interest. Many claim files will have anomalies or gaps of some type, and we do not suggest that such anomalies or gaps are always enough to deem arbitrary or capricious the decisions of a plan administrator. But there is more here.

In explaining its denial decision to this court, Aetna avers that it was Lavery's burden to "show[] that he was free from melanoma during the look-back period." This assertion contradicts the plain language of the Plan. The Plan states that a disease is a pre-existing condition if, during the look-back period, the disease was "diagnosed or treated," or the applicant received "services" or took prescribed or recommended drugs for the disease. Lavery did not have to show that he was free from melanoma during the look-back period in order to be covered under the Plan. Nor does the fact that Lavery had melanoma during the look-back period establish that the disease was a pre-existing condition as defined by the Plan.

Aetna's flatly incorrect interpretation of the Plan strongly suggests that either Aetna has been mistakenly relying on

an overly broad reading of the pre-existing condition exclusion or that it is behaving like a conflicted party intent on advocating for a desired result rather than a fiduciary explaining its decision. Cf. Encompass Office Sols., Inc. v. La. Health Serv. & Indem. Co., 919 F.3d 266, 282 (5th Cir. 2019) (considering whether a plan administrator's construction of a plan was contrary to its plain language in determining whether the administrator acted unreasonably). Taking all of this together, we find that Aetna's denial of Lavery's claim was less the decision of a reasoned fiduciary and more the product of an arbitrary attempt to justify a preferred result, and so Aetna's decision is not entitled to deference.

Our decision that Aetna's handling of Lavery's claim was arbitrary and capricious under Glenn does not mean that Lavery necessarily prevails. We also need to consider how the plan is best read without the benefit of a fiduciary decision upon which we can rely. On this point, Hughes teaches that, left to our own devices, we should read this exclusion against the insurer. 26 F.3d at 270. Applying contra proferentum, we read the Plan just as Leimback and the two clinical technicians read it: Dr. Lopez did not treat melanoma, provide services for melanoma, prescribe or recommend drugs for melanoma, or diagnose Lavery's disabling disease as melanoma. We therefore agree with the district court

- 17 -

that Lavery's claim should not have been denied based on his office visit with Dr. Lopez during the initial look-back period.

**B.**

Aetna next argues that, notwithstanding Lavery's April 2014 visit with Dr. Lopez, Dr. Deignan's diagnosis on June 19, 2014, provided a second basis for denying Lavery's claim under the pre-existing condition exclusion. Aetna argues that, although it initially represented to Lavery that his look-back period was March 1, 2014, to May 31, 2014, his actual look-back period was April 1, 2014, to June 30, 2014 (the "corrected look-back period"). This, Aetna contends, is because Restoration Hardware amended the Plan on June 23, 2014 -- retroactively effective as of May 1, 2014 -- to provide that a participant's coverage eligibility date (and the date from which the look-back period is calculated) is the first day of the calendar month following a thirty-day probationary period. According to Aetna, because Lavery became a coverage-eligible Restoration Hardware employee in mid-May 2014, his look-back period under the amended Plan began three months prior to July 1 (April 1 to June 30), encompassing Dr. Deignan's June 19, 2014, diagnosis.

Lavery does not dispute that Dr. Deignan's diagnosis would render his malignant melanoma a pre-existing condition if his look-back period was indeed April 1, 2014, to June 30, 2014. He argues, instead, that Aetna violated ERISA and caused him

prejudice by failing to give him an opportunity to respond to Aetna's reliance on the corrected look-back period.  We agree.

Department of Labor regulations provide claimants with a reasonable opportunity to respond to new or additional rationales for why their claims have been denied.  29 C.F.R. § 2560.503-1(h)(4)(ii) specifically provides:

> (4)  The claims procedures of a plan providing disability benefits will not, with respect to claims for such benefits, be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless . . . the claims procedures --
>
> . . .
>
> (ii)  Provide that, before the plan can issue an adverse benefit determination on review on a disability benefit claim based on a new or additional rationale, the plan administrator shall provide the claimant, free of charge, with the rationale; the rationale must be provided as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided under paragraph (i) of this section to give the claimant a reasonable opportunity to respond prior to that date.

Id.

Aetna's initial decision in March 2015 to deny Lavery's claim relied only on Lavery's office visit with Dr. Lopez during the initial look-back period.  It was not until its September 2015 final denial decision that Aetna first told Lavery that there was a corrected look-back period upon which Aetna relied as an

- 19 -

alternative basis for denial. Indeed, prior to the September decision, Aetna repeatedly told Lavery that his look-back period was March 1, 2014, to May 31, 2014. Because Aetna made clear that the September decision was "final" and that Aetna would take "no other action," Lavery was never given an opportunity to respond to the corrected look-back period. We find this to be a clear violation of 29 C.F.R. § 2560.503-1(h)(4)(ii).

Having found a procedural violation, we next turn to the issue of whether that violation prejudiced Lavery. See Stephanie C., 813 F.3d at 425 ("[E]ven if the claimant shows that procedural irregularities have occurred in the course of a review, we typically require her to show prejudice as well." (citing Bard v. Bos. Shipping Ass'n, 471 F.3d 229, 240–41 (1st Cir. 2006); Recupero v. New Eng. Tel. & Tel. Co., 118 F.3d 820, 840 (1st Cir. 1997))).

Lavery asserts that had he been given the opportunity to challenge the corrected look-back period, he would have argued that he was working for Restoration Hardware in a coverage-eligible position before May 2014, creating a pre-June 2014 look-back period even under the amended Plan. Aetna responds that Lavery had the opportunity to make this argument during the administrative review process.[2] Aetna points to a declaration Lavery submitted when he

---

[2] If Lavery could have shown that his look-back period pre-dated not only the June 2014 visit with Dr. Deignan, but also the April 2014 visit with Dr. Lopez, neither visit could be used by Aetna as a basis for denying his claim.

- 20 -

appealed the initial denial of his claim, in which Lavery stated, among other things, that he (1) worked for Restoration Hardware from April 15, 2013, to May 12, 2014, as a "Construction Associate"; (2) was asked to join the Restoration Hardware team "full time" as a "Regional Facilities Manager/Store Facilities Leader"; (3) "actually started working more than 40 hours per week for Restoration Hardware by the end of April 2014"; and (4) began his new job as Regional Facilities Manager/Store Facilities Leader on May 12, 2014 -- his "formal start date" -- "with full time benefits to begin June 1, 2014." This declaration, Aetna says, shows that Lavery was fully capable of contesting the initial look-back period on the same grounds on which he now challenges the corrected look-back period.

But even if Lavery could have contested the look-back period, he "had little reason" to do so. Bard, 471 F.3d at 241. Throughout the entire administrative process up until he received the final decision, Lavery had no cause to believe that his claim was being denied for any reason other than the April 2014 visit with Dr. Lopez. And Lavery's declaration states that he did not begin working as a de facto full-time Restoration Hardware employee (full-time employment being a condition of benefits coverage eligibility under the Plan) until the end of April 2014. In accordance with his declaration, Lavery's look-back period under the pre-amended Plan -- three months before the first day of the

- 21 -

first full calendar month of eligible employment -- would have been February 1, 2014, to April 30, 2014, encompassing the Dr. Lopez visit nonetheless. Therefore, Lavery had no reason to contest the look-back period until Aetna used the corrected look-back period and the June 2014 visit with Dr. Deignan to deny his claim. But by that time, as explained above, Aetna had foreclosed his opportunity to respond.

We will not now hold against Lavery his decision to train his efforts on fighting Aetna's initial basis for denying his claim to the exclusion of the corrected look-back period basis, when that decision was made in reliance on Aetna's repeated representations about the look-back period. See, e.g., id. at 243 n.20 (noting the harm to a claimant caused by an ERISA plan's failure to put him on notice of a fact that precluded him from making a "substantial argument"). Because it is apparent from the record that Lavery was lulled into foregoing the presentation of the substantial argument that he qualified even under the amended Plan,[3] we find that Lavery has met his burden of showing that he was prejudiced by Aetna's last-minute, unchallengeable invocation of the corrected look-back period in the final letter rejecting his appeal. See Stephanie C., 813 F.3d at 425; see also Buntin v.

---

[3] The parties agree that Lavery did not receive the amended Plan until at least September 24, 2015, after Aetna issued the final decision denying his benefits claim.

City of Bos., 813 F.3d 401, 404 (1st Cir. 2015) (observing that this court may affirm "on any basis made evident by the record").

## C.

Having determined that Aetna's decision to deny Lavery's benefits claim does not pass muster under arbitrary and capricious review, we next address the remedy.  Aetna argues that remand is required so that it can "address[] the principal issue for adjudication of a disability claim, that is, whether Lavery's condition and restrictions prevented him from performing the principal functions of his own occupation."  But while "[t]here is no question that this court has the power to remand to the claims administrator[,] it also has the power, in appropriate cases, to award benefits to the disability claimant." Buffonge v. Prudential Ins. Co. of Am., 426 F.3d 20, 31 (1st Cir. 2005) (citing Cook v. Liberty Life Assur. Co. of Bos., 320 F.3d 11, 24 (1st Cir. 2003) ("Once a court finds that an administrator has acted arbitrarily and capriciously in denying a claim for benefits, the court can either remand the case to the administrator for a renewed evaluation of the claimant's case, or it can award a retroactive reinstatement of benefits.")).  A retroactive benefits reinstatement is appropriate in ERISA cases where there is no record evidence to support a denial of benefits. Cook, 320 F.3d at 24 (quoting Grosz-Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1163 (9th Cir. 2001)).

There is ample, indeed compelling, evidence to conclude that, at least at the time his benefits claim was denied, Lavery was disabled.  In its initial March 2015 denial letter to Lavery, Aetna referred numerous times to Lavery's "disability," stating:

> Our records indicate that you became disabled on 09/30/2014 due to melanoma of skin.  Your file shows that . . . you became disabled on September 30, 2014 due to melanoma of skin . . . .   As such your Long Term Disability claim has been denied, as your current disability is a pre-existing condition as defined by the plan.

Internal records also demonstrate unanimous belief amongst Aetna insiders that Lavery was entitled to benefits unless the pre-existing condition exclusion applied.  Further, internal records and a letter from one of Lavery's doctors show that Lavery underwent an eleven-month interferon therapy treatment that was scheduled to end in October 2015.  This treatment had severe side effects and, according to Aetna's records, left Lavery "unable to perform his duties."  Though Aetna's records state that Lavery's work capacity beyond February 2015 would need to be reevaluated, there is no evidence justifying the denial of Lavery's claim based on a lack of a disability.  See id. at 24.  Therefore, we can say that, at least for some period of time, Lavery "was denied benefits to which he was clearly entitled."  Buffonge, 426 F.3d at 31.

We now consider a more difficult issue:  the duration of time for which Lavery is entitled to back benefits.  Aetna asks us

to remand because it does not have "any updated or recent medical information to evaluate to determine whether Lavery could continue to meet the Plan's test of disability beyond the initial limited time period for which he originally submitted information."  Aetna also correctly notes that the standard for determining whether an employee has a disability entitling him or her to long-term benefits grows more difficult to meet after the first twenty-four month period.  During the first twenty-four month "own occ" period, an employee is entitled to long-term benefits if he or she is unable "to perform the material duties of [his or her] own occupation."  After that twenty-four month "own occ" period, an employee is entitled to long-term benefits only if he or she is unable "to work at any reasonable occupation," i.e., "any occ." Therefore, Aetna asserts, "there is no basis upon which a court or Aetna could find that Lavery, as of approximately March 29, 2017 . . . would qualify for benefits under the Plan's 'any reasonable occupation' test of disability."  In short, Aetna's argument is that because no determinations were made and no record evidence is now available as to whether Lavery was disabled during the latter part of the "own occ" period and throughout the relevant "any occ" period to date, remand is appropriate.

We start with the principle that "Congress gave the federal courts a range of remedial powers . . . encompass[ing] an array of possible responses when the plan administrator relies in

litigation on a reason not articulated to the claimant." Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113, 131 (1st Cir. 2004); id. at 130 (noting that "[i]n this context, no single answer fits all cases"). Here, as in Glista, we find that several factors weigh in favor of precluding Aetna from completely asserting their "no disability" defense as a means for achieving remand.

First, Lavery's medical condition "calls for resolving this controversy quickly." Id. at 132. Aetna's internal records state that, as of mid-2014, Lavery had Stage III malignant melanoma. At argument, Lavery's counsel represented that Lavery's cancer has now advanced to Stage IV.

Second, and importantly, the unfortunately unsurprising picture of a worsening illness suggests that Aetna's assessment of Lavery as disabled would have been unlikely to change as time went by.

Third, it is now August of 2019. It is impossible to do contemporaneous exams or to document with specificity Lavery's day-to-day activity over the now past few years. This is presumably one of the reasons why Aetna reserves the right to deny claims that are not promptly brought to its attention. Here, Aetna's wrongful denial rather than Lavery's delay has caused the inability to do contemporaneous assessments of his condition. Cook, 320 F.3d at 24-25 ("It would be patently unfair to hold that an ERISA plaintiff has a continuing responsibility to update her

former insurance company and the court on her disability during the pendency of her internal appeals and litigation, on the off chance that she might prevail in her lawsuit."). As in Cook, the "reconstruction of the evidence of disability during the years of litigation" could be difficult, if not impracticable, for Lavery. Id. at 25.

With these factors in mind -- especially considering the fact that the record suggests that it is unlikely that Lavery's disability has lessened -- we conclude that it would be inequitable to vacate the district court's order and judgment. Lavery's short-term benefits claim was converted to a long-term disability claim in January 2015. Since then, he has received no long-term disability benefits. This delay was caused by Aetna's wrongful denial of his benefits. The potential risk of more years of administrative review and subsequent litigation, particularly in light of Lavery's deteriorating medical condition, leads us to hold that the "appropriate equitable relief" is to affirm the district court's order of back benefits. Id.; see also Glista, 378 F.3d at 132.

Recognizing that more than a year has passed since the district court's order and initial judgment, we remand with instructions for the district court to extend its award of back benefits through the date of the mandate corresponding with our opinion today. If Lavery seeks any further disability benefits

for time periods after that date, he must proceed pursuant to Aetna's administrative process under the Plan's "any occ" standard.

**D.**

Aetna's final argument is that the district court's prejudgment interest award of $17,123.07 should be vacated because "[t]here is simply no basis in the record for the trial court to arrive at this number." However, Aetna neglects to address Docket Entry Number 73, in which the district court concluded that prejudgment interest was "appropriate given the passage of time from the denial of benefits (September 11, 2015) to the Court's Order ordering the payment of same on August 6, 2018," and found that Lavery's prejudgment interest calculation was "reasonable."[4] Lavery, in reaching his proposed prejudgment interest award, detailed the manner in which he determined the principal amount of back benefits, identified the applicable interest rate (which Aetna does not contest), and used an interest calculator.

Aetna does not challenge Lavery's calculation or provide its own. It merely asserts that the district court's prejudgment

---

[4] In referencing Lavery's calculation, the court appears to have mistakenly cited page ten of Docket Entry Number 65 (the defendants' first notice of appeal) rather than of Docket Entry Number 64 (an affidavit in support of Lavery's motion to alter the judgment to include an award of fees, costs, and prejudgment interest). Page ten of the affidavit contains the prejudgment interest calculation.

interest award was "based on no foundation."  As shown, that is not so.  Rather, pursuant to its "broad discretion both to determine whether to award prejudgment interest and to determine the parameters of such an award," Radford Tr. v. First Unum Life Ins. Co. of Am., 491 F.3d 21, 23 (1st Cir. 2007), the district court reviewed, credited, and adopted Lavery's supported calculation.  Finding no abuse of discretion, we therefore decline to vacate the court's prejudgment interest award.  On remand, we expect that the parties should be able to agree upon the amount of past benefits due, additional interest, costs, and perhaps attorneys' fees.  If not, the district court can resolve any disputes.

## III.

For all the reasons stated above, we find that Aetna's resolution of the relevant ambiguity was arbitrary and that an unconflicted fiduciary would likely have found coverage.  We therefore affirm and remand to the district court for further proceedings that may be necessary in view of this opinion and the passage of time from the prior entry of judgment.