NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JAN 27 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| R. R.; E. R., | No. 24-6337 |
| Plaintiffs - Appellants, | D.C. No. 3:22-cv-07707-JD |
| v. | |
| CALIFORNIA PHYSICIANS' SERVICE, d/b/a Blue Shield of California, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Northern District of California
James Donato, District Judge, Presiding

Argued and Submitted October 23, 2025
San Francisco, California

Before: PAEZ, BEA, and FORREST, Circuit Judges.
Dissent by Judge PAEZ.

Plaintiffs-Appellants R.R. and his son E.R. (collectively, "Plaintiffs") sued

Defendant-Appellee California Physicians' Service d/b/a Blue Shield of California

("Blue Shield") for recovery of benefits under the Employee Retirement Income

Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).  Plaintiffs seek medical

---

[*]  This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

expenses under R.R.'s employee benefit plan (the "Plan"), which lists E.R. as a covered dependent. Blue Shield, the Plan administrator, denied benefits for E.R.'s stay at Innercept, a residential mental-health treatment center, on the ground that E.R.'s stay was not "medically necessary" under the Plan. The district court granted summary judgment in favor of Blue Shield. Plaintiffs timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

In an ERISA benefits case in which the abuse-of-discretion standard applies, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment . . . do not apply." *Nolan v. Heald Coll.*, 551 F.3d 1148, 1154 (9th Cir. 2009) (internal quotation marks and citation omitted). We review de novo the district court's "choice and application of the standard of review to decisions by fiduciaries in ERISA cases." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962 (9th Cir. 2006) (en banc).

1. The district court correctly found that Blue Shield's decision is reviewed for abuse of discretion. The Plan authorizes Blue Shield to "construe and interpret the provisions of this Plan" and to "determine eligibility to receive Benefits under this Plan." Where, as here, a plan confers "discretion on the administrator 'to determine eligibility for benefits or to construe the terms of the plan,'" the standard of review is abuse of discretion. *Abatie*, 458 F.3d at 963 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

2. The deference we grant Blue Shield is "tempered by skepticism," *id.* at 959, because Blue Shield, which acts as both the administrator that decides claims and the insurer that pays benefits, has a conflict of interest. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112–13 (2008). The district court did not consider Blue Shield's conflict of interest because neither party raised the issue. *R.R. v. Blue Shield of Cal.*, 2024 WL 3748331, at *3 n.2 (N.D. Cal. Aug. 8, 2024). Plaintiffs did not raise this issue in the district court and have not raised it on appeal, so we could treat it as forfeited. But we elect to consider the conflict for the first time on appeal because "the pertinent record has been fully developed." *Rose Ct., LLC v. Select Portfolio Servicing, Inc.*, 119 F.4th 679, 688 (9th Cir. 2024) (citation omitted).[1]

Where, as here, "a plan grant[s] discretionary authority to the plan administrator, a deferential standard of review remains appropriate even in the face of a conflict." *Conkright v. Frommert*, 559 U.S. 506, 512 (2010) (citation omitted). We still review Blue Shield's decision for abuse of discretion and must affirm unless Plaintiffs show that the decision was "illogical, implausible, or without support in

---

[1] "[A] district court may review only the administrative record when considering whether the plan administrator abused its discretion." *Abatie*, 458 F.3d at 970. Although a district court "may consider evidence outside the record" when deciding "how much weight to give a conflict of interest," it is not required to do so. *Id.* We may consider the effect of Blue Shield's conflict, because we stand "in the same position as the district court." *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 632 (9th Cir. 2009) (citation omitted); *see id.* at 633–38 (evaluating the effect of an administrator's conflict for the first time on appeal).

inferences that may be drawn from the facts in the record." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009)). However, our "skepticism" of Blue Shield's decision is "heightened" because of the conflict. *Id.* at 681.

Blue Shield's conflict is "a factor to be weighed" in our review. *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 631 (9th Cir. 2009). The weight it is afforded depends "on the degree to which the conflict appears improperly to have influenced [its] decision." *Id.* A conflict is given more weight where a plaintiff produces evidence that "suggest[s] a higher likelihood that [the conflict] affected the benefits decision," such as showing that an administrator has a "history of biased claims administration." *Id.* (quoting *Glenn*, 554 U.S. at 117). A conflict "prove[s] less important (perhaps to the vanishing point)" where an administrator takes "steps to reduce potential bias and to promote accuracy," *Glenn*, 554 U.S. at 117, such as by using a "neutral, independent review process." *Abatie*, 458 F.3d at 969 n.7.

Plaintiffs have not offered evidence that Blue Shield's conflict of interest "affected the benefits decision." *Montour*, 588 F.3d at 631 (quoting *Glenn*, 554 U.S. at 117). Plaintiffs, "as the party claiming the conflict," bear the burden "to produce evidence of a financial conflict sufficient to warrant a degree of skepticism." *Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 902 (9th Cir. 2016). Plaintiffs offer no evidence that Blue Shield's independent physician was financially dependent on

Blue Shield, that Blue Shield has a history of biased claims administration, or any other fact that warrants heightened skepticism. Plaintiffs could perhaps have developed the record in the district court. They did not.

Plaintiffs did not raise the conflict issue in either the district court or on appeal. Blue Shield, by contrast, retained an independent physician to review E.R.'s appeal, and she concluded that his stay at Innercept was not medically necessary under the Plan. This "neutral, independent review process," *Abatie*, 458 F.3d at 969 n.7, combined with Plaintiffs' failure to meet their burden of production, makes Blue Shield's conflict "less important" to our analysis, "perhaps to the vanishing point." *Glenn*, 554 U.S. at 117. In *Demer*, we noted that the claimant's failure to offer "specific evidence . . . minimize[d] the weight assigned to the conflict of interest." 835 F.3d at 903 (citation, internal quotation marks, and alterations omitted). Here, Plaintiffs offered no evidence, so the conflict has no effect on our analysis.

3. Having determined that Blue Shield's conflict of interest does not affect our standard of review, we turn to the application of our abuse-of-discretion test. We conclude that Blue Shield did not abuse its discretion in determining that residential treatment was not "medically necessary" for E.R. under the terms of the Plan.

Blue Shield has adopted the Magellan Care Guidelines ("the MCG") to govern the meaning of "medically necessary" under the Plan. It was proper for Blue Shield

to use the MCG to interpret medical necessity, as the guidelines are "nationally recognized" and "widely used." *Todd R. v. Premera Blue Cross Blue Shield of Alaska*, 2021 WL 2911121, at \*14 (W.D. Wash. July 12, 2021).

Under the MCG, it is medically necessary to admit an adolescent to a residential mental-health facility only if he meets one of the following criteria:

(a)    is a danger to himself due to auditory hallucinations or persistent thoughts of suicide or serious self-harm;

(b)    is a danger to others due to auditory hallucinations or persistent thoughts of homicide or serious harm to others; or

(c)    has a behavioral health disorder with moderately severe psychiatric, behavioral, or other comorbid conditions and a serious dysfunction in daily living.

Blue Shield's determination that E.R. did not meet the criteria for medical necessity when he was admitted to Innercept or at any point during his stay was not "illogical or implausible." *Salomaa*, 642 F.3d at 676. Innercept records from throughout E.R.'s stay show that he never met the criteria for residential treatment to be "medically necessary."

We may affirm Blue Shield's decision "if it is grounded on *any* reasonable basis." *Montour*, 588 F.3d at 629 (emphasis in original). Though Blue Shield has a conflict of interest, its effect is minimal: Blue Shield retained an independent physician, and Plaintiffs identify no evidence that the conflict likely affected the determination. Further, the Innercept records are clear: they show, with near

unanimity, that E.R. did not meet the MCG criteria. Even after we account for Blue Shield's conflict of interest, it did not abuse its discretion.[2]

4. Plaintiffs make several arguments to the contrary, but none of them justifies reversal.

First, Plaintiffs argue that Blue Shield should not have relied on the Innercept records because they were based on E.R.'s self-reports, which were not credible. However, it was not an abuse of discretion for Blue Shield to consider the Innercept records, as they were the most contemporaneous reports of E.R.'s mental state. The Innercept records reflect the judgment of independent clinicians and were thus not affected by Blue Shield's structural conflict of interest. On abuse-of-discretion review, we must consider "the entire record," *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1179 (9th Cir. 2005), and may uphold an administrator's decision "if it is grounded on *any* reasonable basis." *Montour*, 588 F.3d at 629 (emphasis in original). Blue Shield properly relied on the Innercept

---

[2] Unlike our dissenting colleague, we see no reason to remand so that the district court may consider Blue Shield's conflict of interest because Plaintiffs' failure to argue that issue was the reason the district court did not consider it. The district court did not ignore the existence of the conflict; it acknowledged that neither party had raised the issue. *R.R.*, 2024 WL 3748331, at *3 n.2. An administrator's conflict of interest is not a jurisdictional issue that a court must consider *sua sponte*. A plaintiff seeking benefits under ERISA bears the burden of proving that an administrator's conflict affected its benefits decision. *See Warmenhoven v. NetApp, Inc.*, 13 F.4th 717, 722 (9th Cir. 2021) ("The plaintiff bears the burden of proof on a § 1132(a)(1)(B) claim.").

records to conclude that E.R. did not present a substantial likelihood of causing serious harm to himself or others.

Second, Plaintiffs argue that Blue Shield failed to explain why it reached the opposite conclusion from E.R.'s treating physicians and parents, who urged that residential treatment was medically necessary. "[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). E.R.'s treating providers wrote their letters after E.R.'s admission to Innercept, did not base the letters on firsthand evaluations at the time of admission, and did not refer to the MCG. Blue Shield did not abuse its discretion by reaching a contrary conclusion based on the Innercept records.

Nor was Blue Shield required to credit the letters from E.R.'s parents over the evaluations of its own independent experts. *Cf. Nord*, 538 U.S. at 825 ("[A]dministrators [need not] credit the opinions of treating physicians over other evidence relevant to the claimant's medical condition"). Deciding whether to credit the opinion of a fully informed expert clinician over that of a non-expert parent is a core exercise of the discretion that the Plan gives to Blue Shield.

Third, Plaintiffs argue that Blue Shield's failure to respond to these letters of medical necessity violated ERISA's procedural obligations, under which an administrator must provide Plaintiffs with "adequate notice," 29 U.S.C. § 1133(1),

and the opportunity for a "full and fair review" of their claim. *Id.* § 1133(2). Under *Nord*, the failure to respond to a claimant's treating physicians, absent more, does not violate ERISA. *See* 538 U.S. at 834 ("[C]ourts have no warrant to . . . impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.").

Further, Blue Shield complied with ERISA procedures. ERISA does not require an administrator to explain its entire "interpretive process" as if it "were an administrative agency." *Gallo v. Amoco Corp.*, 102 F.3d 918, 922 (7th Cir. 1996) (Posner, J.). An administrator must give enough reasons to enable a "meaningful dialogue" with the claimant, *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997), but "need not address every piece of evidence submitted." *Collier v. Lincoln Life Assurance Co. of Bos.*, 53 F.4th 1180, 1188 (9th Cir. 2022). Blue Shield's initial denial letter included a statement of reasons why E.R.'s treatment was not medically necessary, listed the criteria applied to the decision, explained the conclusion, and instructed Plaintiffs on how they could appeal, thus complying with ERISA regulations. *See* 29 C.F.R. §§ 2560.503-1(g)(i)–(v). Blue Shield's final letter also complied with ERISA regulations: an independent physician considered Plaintiffs' records, applied the MCG, found that residential care was not medically necessary, and explained that conclusion. *See id.* § 2560.503-1(h).

Moreover, even if Blue Shield did commit a procedural violation, it was not so "wholesale and flagrant" as to merit de novo review of its determination, nor would it change the result of our review for abuse of discretion. *Abatie*, 458 F.3d at 971. Blue Shield had three medical professionals examine Plaintiffs' claim, and, after considering Plaintiffs' records, it issued timely denial letters explaining its reasoning. Where, as here, there has been an "ongoing, good faith exchange of information," a court should give the administrator "broad deference notwithstanding a minor irregularity." *Id.* at 972.

Fourth, Plaintiffs argue that Blue Shield violated the general rule that an administrator may not "present a new rationale to the district court that was not presented to the claimant . . . during the administrative process." *Collier*, 53 F.4th at 1186. The district court found that Blue Shield's position had been consistent: residential care was not medically necessary for E.R. based on the MCG. We agree.

Plaintiffs contend that the rule against post hoc rationalizations must operate at a lower level of generality than whether a treatment is "medically necessary," and that in litigation, Blue Shield should have been limited to the factual arguments that it made in its denial letters. But the rule does not reach that far. There is a difference between offering a new rationale and offering new evidence to bolster an existing rationale. *See Beach v. Liberty Life Assurance Co. of Bos.*, 763 F. App'x 601, 602 (9th Cir. 2019) (noting that "new factual arguments . . . did not constitute a new

reason" for a decision). An administrator may not justify its decision under one provision of a plan during the administrative process and then under a separate provision in litigation. *See Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 719–20 (9th Cir. 2012). But an administrator may cite evidence in litigation that it had not cited during the administrative process, so long as that evidence supports the same underlying legal theory. Here, Blue Shield cited new evidence, which was in the administrative record and available to both parties, to advance its consistent argument that E.R.'s stay was not medically necessary. That is not a new rationale.

**AFFIRMED.**

*R. R., et al. v. California Physicians' Service*, No. 24-6337

PAEZ, Circuit Judge, dissenting:

I agree with the majority's decision to apply a "tempered" abuse of discretion standard of review. The majority, however, misapplies *Abatie* by ignoring Blue Shield's failure to credit Plaintiffs' reliable evidence and failure to engage in a meaningful dialogue in the internal appeals process. These factors do not "vanish[,]" as suggested by the majority—instead, they warrant heightened skepticism of Blue Shield's decision to deny Plaintiffs' request for benefits. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 972 (9th Cir. 2006) (en banc).

**1.** The majority purports to apply an abuse of discretion standard with "heightened" skepticism, but proceeds to apply no skepticism at all to Blue Shield's decision-making process. Specifically, the majority repeatedly states that Blue Shield's decision should be upheld "if it is 'grounded on *any* reasonable basis[,]'" ignoring *Montour's* clear guidance, in the same paragraph, that such a standard applies only "[i]n the absence of a conflict." Majority at 6-7; *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 629 (9th Cir. 2009). Similarly, the majority repeatedly asserts that Blue Shield's decision should be upheld if it was not "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record," ignoring the next sentence in *Salomaa*: "with the qualification that a higher degree of skepticism is appropriate where the

administrator has a conflict of interest." Majority at 3-4, 6; *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011).

Where "the same entity that funds an ERISA benefits plan also evaluates claims," we have held that "[s]imply construing the terms of the underlying plan and scanning the record for medical evidence supporting the plan administrator's decision is not enough[.]" *Montour*, 588 F.3d at 630 (citations omitted). I address two areas below where the majority's analysis is "not enough." *See id.*

**2.** The majority concludes that Blue Shield's conflict is "less important" to the analysis, "perhaps to the vanishing point," because Blue Shield retained an independent physician to review E.R.'s appeal and Plaintiffs did not produce evidence that the conflict affected Blue Shield's benefits decision. Majority at 5. This overlooks the framework set forth in *Abatie*, which provides that "[a] court may weigh a conflict more heavily if" the administrator "fails to credit a claimant's reliable evidence." *See Abatie*, 458 F.3d at 968 (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)).

On this record, there are no indicia that the opinions of E.R.'s treating physicians, as provided in four letters, are anything but reliable. Rather, these letters show that four highly qualified medical professionals with decades of experience, who had treated E.R. for years, agreed that residential treatment was medically necessary for him. They also provided specific examples from his

2

medical history to explain their opinions. Two of the letter writers (E.R.'s psychiatrist and psychologist) stated that they treated E.R. "regularly," with the latter having treated him four times per week. The majority does not address the reliability of Plaintiffs' evidence at all when determining the level of skepticism warranted in this case.[1] Blue Shield's failure to credit this evidence demonstrates that its inherent conflict should be weighed more heavily in determining whether the denial of benefits was an abuse of discretion.

**3.** I agree with the majority that, on this record, Blue Shield did not commit procedural violations so "wholesale and flagrant" as to warrant de novo review. The majority proceeds, however, to again fail to recognize controlling law under *Abatie*: even less flagrant procedural irregularities are "matter[s] to be weighed in

---

[1] Rather, the majority states that it was not an abuse of discretion for Blue Shield to refuse to credit the treating physicians' letters, because they were written after E.R.'s admission to Innercept without a first-hand evaluation. Majority at 8. This reasoning is flawed. Because the letters were submitted as part of Plaintiffs' internal appeal, it is not surprising that they would be written after E.R. entered Innercept and the initial request for benefits was denied. Further, E.R.'s *outpatient* treating physicians were not required to conduct a first-hand evaluation of him at Innercept, where he was specifically seeking a *residential* level of care. The majority also faults the letters for "not refer[ring] to the MCG." Majority at 8. This is a mischaracterization of the record. The letters did not use the exact term "MCG," but they demonstrate that, from the treating physicians' point of view, E.R. satisfied, at minimum, the MCG's third criterion for admission to Innercept. The majority focuses only on the first and second criterion for admission, i.e., whether E.R. was a danger to himself or to others, but the third criterion is independently sufficient.

deciding whether an administrator's decision was an abuse of discretion." *See Abatie*, 458 F.3d at 972.

Blue Shield's denial letters failed to comply with ERISA's procedural requirements because they do not constitute a "meaningful dialogue between [the] ERISA plan administrator[] and [its] beneficiaries." *See Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997).

Blue Shield's denial letters did not engage with any of the arguments or evidence put forth by Plaintiffs in their internal appeal. Indeed, the final denial letter either misstated or ignored the contents of Plaintiffs' internal appeal. Most troubling, in my view, is Blue Shield's repeated assertion that E.R. could be successfully treated in a less-monitored level of care, such as a partial hospitalization program.

Blue Shield failed, entirely, to acknowledge evidence submitted by Plaintiffs that E.R. previously attempted treatment through a partial hospitalization program in March 2018, but it was not successful. On his third day in that program, the manager of the program "indicated that [it] could not accommodate [E.R.]," and discharged him. On E.R.'s last day of the program, he was still struggling with severe behavioral issues, proving that the treatment was not effective. E.R. was then admitted to a residential treatment facility, where E.R. was not successful, and

then continued in an intensive outpatient treatment program, but his symptoms continued.

Blue Shield's denial letters do not constitute a "meaningful dialogue" because the meaningful communication is flowing in only one direction: from Plaintiffs to Blue Shield. Worse, Blue Shield's failure to consider the evidence of E.R.'s failed treatment at lower levels of care raises questions as to its appropriate application of the MCG criteria, which are supposed to consider whether the treatment is "not feasible at [a] lower level of care," e.g., "less intensive level is… not suitable for [a] patient's condition or history." This irregularity warrants additional skepticism of Blue Shield's decision.

**4.** Considering these factors, I would hold that the abuse of discretion standard of review requires less deference to Blue Shield's decision. Like in *Demer*, I would hold that "there is neither a lack of conflict of interest (justifying no skepticism) nor a substantial conflict of interest (warranting enhanced skepticism)."[2] *See Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 903 (9th Cir.

---

[2] The majority cites to *Demer* to assert that Plaintiffs failed to meet their burden of production regarding Blue Shield's conflict. Majority at 4-5. While *Demer* states that a "lack of more powerful evidence" of a financial conflict minimizes its weight, the next sentence states: "But that lack of such specific evidence does not mean that there is *no* conflict of interest." *Demer*, 835 F.3d at 903 (emphasis in original). This aligns with *Abatie*, which held that "[g]oing forward, plaintiffs will have the benefit of an abuse of discretion review that always considers the inherent conflict when a plan administrator is also the fiduciary, even in the absence of 'smoking gun' evidence of conflict." *Abatie*, 458 F.3d at 969. Plaintiffs were not

2016).  Instead, Blue Shield's structural conflict, failure to credit Plaintiffs' reliable evidence, and failure to engage in a meaningful dialogue "warrant[] some, but not substantial, weight under *Abatie* and *Montour*."[3]  *See id.*

The record reveals that all of E.R.'s treating physicians determined that residential treatment was medically necessary and that E.R. had attempted all lower levels of treatment without success.

Further, to the extent that Blue Shield, like the district court, relied on E.R.'s self-reported symptoms from his hospital admission in January 2020 and Innercept admission in February 2020, this reasoning is infirm.  This is because E.R. had a well-documented history, as recognized by his physicians at Innercept, of misrepresenting or misunderstanding his psychotic symptoms.

Approximately one month before his admission to Innercept, E.R. was involuntarily hospitalized for threatening his psychologist and his mother with physical violence.  On his first day at Innercept, E.R. shared that he experienced "five personas that [he] put in boxes," and once they were there, "[t]hey never got

---

required to submit "smoking gun" evidence of Blue Shield's inherent conflict, which is apparent on this record, for it to be considered.  *See id.*

[3] I note that, applying "some" skepticism to MetLife's decision in *Demer*, the court held that MetLife abused its discretion.  *Demer*, 835 F.3d at 907.  The court relied on facts similar to those here: the plaintiff provided "substantial" and "corroborat[ed]" evidence of his disability, but MetLife relied on independent reviewers who had not examined him or explained why they rejected his credibility.  *Id.*

out but it took up [to] 85% of [E.R.'s] energy to keep them there." His provisional diagnosis included schizoaffective disorder, an unspecified anxiety disorder, and bipolar disorder, "episodes mixed, severe with psychotic features[.]" Six days later, E.R.'s therapists at Innercept indicated that he was a "high" risk of danger to himself and others. One month later, E.R.'s therapist noted that E.R. could not control himself when he was experiencing manic and psychotic episodes.

Just over two months into the program, E.R. put a peer resident into a chokehold. Throughout this period, he was often unable to perform in school. The record thus shows that, at least at the outset of his time at Innercept, E.R. struggled with a "[s]erious deterioration in interpersonal interactions ([e.g.,], impulsive or abusive behaviors)," "[i]nability to perform adequately in school (including specialized setting) due to disruptive or aggressive behavior," and "[s]everely diminished ability to assess [the] consequences of [his] own actions[.]"[4] Under the MCG, these examples constitute "[s]erious dysfunction in daily living for [a] child or adolescent," caused by E.R.'s "[m]oderately severe [p]sychiatric [or]

---

[4] E.R.'s parents provided additional evidence that E.R. engaged in this behavior up to the time of his admission to Innercept. I agree with the majority that Blue Shield was not required to credit the medical information provided by E.R.'s parents over the information provided by clinicians. Their description of his behavior at home and in school, however, is highly probative of the third MCG criterion. The MCG explicitly considers behaviors that are observable in interpersonal interactions and in school—settings that a parent is much more likely to witness than a clinician.

behavioral" condition, demonstrating that E.R. satisfied the third MCG criterion for admission to Innercept.

Accordingly, under a less-deferential standard, I would hold that Blue Shield abused its discretion. At minimum, I would remand to the district court to reconsider Plaintiffs' claim for benefits under a less-deferential standard of review.